**UNITED STATES of America,**
**Appellee,**

v.

**William Dennis STEELE, Appellant.**

**No. 72–1269.**

United States Court of Appeals,
Tenth Circuit.

Nov. 10, 1972.

indictment in the District of Utah. The first count was under 18 U.S.C. § 371, alleging a general conspiracy and a conspiracy to commit the offenses described in counts II and III. This count I contained ninety-six separate allegations of overt acts. Count II alleged a violation of 21 U.S.C. § 176a, and alleged smuggling of marijuana and transportation and concealment thereof. Count III was under the same provision and contained allegations essentially the same as count II.

Of those named in the indictments, the trial started with eight defendants on November 17th, 1971, and continued on the 18th, 19th and 22nd of November. On the 22nd of November, six of the defendants entered pleas of guilty and all charges were dismissed as to another. The briefs of both parties state that plea bargaining had continued during the course of the trial until November 22nd when the pleas were entered. The pleas and the dismissal left the defendant Steele as the only defendant remaining as he refused to change his plea. The trial thereupon continued with him as the only defendant.

There was no evidence introduced as to counts II and III of the indictment as to Steele and they were dismissed. The trial of defendant Steele, however, proceeded on count I, the conspiracy charge. On November 23rd, the jury returned a guilty verdict against Steele. On February 7th, 1972, at the sentencing of Steele, he moved for judgment of acquittal, which was denied, and he was sentenced to five years imprisonment.

Of the ninety-six separate overt acts alleged in count I, only one refers to the defendant Steele. This is No. 84, and alleges a conversation between defendant Steele and Gerald Hart on January 25th, 1971. Hart appeared as a witness during the course of the trial and the record before us as it pertains to the defendant Steele contains only the testimony of the witness Hart and the testimony given by Steele in his own defense.

---

James N. Barber, Salt Lake City, Utah, for appellant.

James F. Housley, Asst. U. S. Atty. (C. Nelson Day, U. S. Atty., with him on brief), for appellee.

Before SETH, HOLLOWAY and BARRETT, Circuit Judges.

SETH, Circuit Judge.

The appellant Steele was indicted together with nine others in a three count

The record contains the testimony of the witness Hart given at his appearance on November 17th, and this covers thirty-four pages of the transcript. The witness was recalled on November 22nd by the defendant Steele, and this testimony covers some twelve pages of the transcript. The testimony of Steele in his own behalf covers approximately eleven pages. Thus the record before this court is a very brief one. The evidence relating to the defendant Steele was very limited as compared to the evidence introduced during the course of the trial pertaining to the other defendants who entered pleas.

As indicated, the bulk of the trial testimony during the first four or five days pertained to the activities of defendants other than Steele, and is concerned with their activities relating to the construction and manufacture of campers with false tops to be placed on pickup trucks, and to be used to conceal marijuana purchased in Mexico and brought across the border illegally into the United States. This evidence and the great number of overt acts alleged in the indictment refer also to the activities of various parties in Mexico in connection with the purchase of marijuana, its concealment in the campers, and its movement into the United States. The only activity of the defendant Steele by which the United States in its case seeks to link him with the conspiracy relates to the use of an airplane piloted by the witness Hart to fly marijuana from Mexico to the United States.

The testimony of the witness Hart is further limited to two or three conversations between the witness and Steele wherein Hart's employment as a pilot was the subject of a conversation. This testimony, as it relates to Steele, is also very limited. Hart's testimony at his first appearance at the trial on November 17th was somewhat different than his testimony given when he was recalled on November 22nd. Hart testified in substance that the defendant Steele on January 25th, 1971 (overt act No. 84), asked him while they were in Zoom's Cafe in Salt Lake City if he would be interested in making some money by flying marijuana across the border. At his second appearance as to this conversation, the witness testified merely that the defendant asked him whether he wanted to make some money by flying, with no mention of marijuana. The witness Hart testified as to another conversation "a few days later" which was essentially the same as the first conversation. The witness Hart further testified that Steele then also inquired whether or not he was still interested. During the course of these conversations, no mention was made by the witness Hart that Steele referred to any other persons as being involved, no names were mentioned, and no times or arrangements for any further meetings were made.

The witness Hart also testified that about three weeks following the first of the conversations referred to above, he encountered the defendant Steele in a cafe in Salt Lake City known as Zoom's Cafe. The testimony was that this encounter had not been prearranged by either party, and the evidence was that both were frequent customers of the cafe. The witness Hart testified as to this encounter, at one of his appearances, that when he entered the cafe, the defendant Steele was walking toward the door and when they met, the defendant Steele thereupon introduced the witness Hart to two of the defendants, J. R. Skinner and James R. Turner, who were seated in the cafe. The witness Hart also testified on his other appearance that perhaps he had seen the defendant Steele with the two persons as he (Hart) entered the cafe. The testimony of Hart was consistent in stating that immediately after the defendant had introduced Hart to Skinner and Turner, Steele left the cafe. Hart thereafter had an extended discussion with the two men, and tentative arrangements were made for Hart to act as a pilot to smuggle marijuana from Mexico by plane. This was followed up by subsequent meetings between Hart and oth-

ers, and a trip to Mexico was made. There is no evidence or testimony in the record of any connection between Steele and the witness Hart thereafter or between Steele and any of the defendants thereafter. The only event which took place at a later date to which the witness Hart testified was a telephone call by him to Steele wherein he told Steele he was going to Mexico and asked Steele if he were going, to which Steele replied that he was not, that he was not interested, and that he was employed. The evidence showed that Hart and Steele had known each other about two and a half years before the incidents mentioned, and that both were frequent visitors at Zoom's Cafe.

As indicated above, Steele took the stand in his own defense and testified that at a birthday party some time prior to the events described above, he had encountered the defendant, J. R. Skinner, who was a friend of his brother, and at that time Skinner asked him whether Steele knew of anyone who could fly him to Los Angeles. This was the only testimony in the record showing any previous contacts between Steele and Skinner before the time when they were both seen in Zoom's Cafe by Hart and the introduction described above was made.

The testimony in the record pertaining to Steele is not sufficient to show any participation by him in the conspiracy charged in the indictment. It shows no connection between him and the conspirators other than the introduction of Hart to two of the conspirators, and shows no knowledge by the defendant Steele of the conspiracy. The testimony of Hart, if the portion thereof referring to his conversation with Steele concerning marijuana is believed, does not relate to any particular conspiracy or any particular activity by Steele which is the subject of the indictment. There is nothing to link the defendant with the conspirators other than the introduction of Hart at the cafe, this is not sufficient evidence upon which to base the conviction. In this connection, it is also impor-

tant to note again the manner in which the trial developed and the extensive testimony which the jury heard pertaining to the conspiracy relating to the use of the campers and which in no way concerned the defendant Steele. As indicated above, this went on for several days. The defendant, however, makes no objection to the manner in which the disappearance of other defendants was handled by the trial court, but he does object to the reading of the entire indictment to the jury at the close of the case which was then directed only to him.

■ It is apparent that when we consider the sufficiency of the evidence, it must be taken in the light most favorable to the United States. United States v. Weiss, 431 F.2d 1402 (10th Cir.); United States v. Bourassa, 411 F.2d 69 (10th Cir.). It is also equally well established that the jury may make all reasonable inferences from this testimony and if the jury could have found beyond a reasonable doubt, then the verdict must not be disturbed. We have upon several occasions, including King v. United States, 402 F.2d 289 (10th Cir.), stated the necessity for the use of circumstantial evidence in conspiracy cases. We have recently considered in United States v. Thomas 468 F.2d 422 (10th Cir. 1972), a conspiracy case where there was found to be no evidence introduced as to the participation in the conspiracy by one of the defendants. In Glover v. United States, 306 F.2d 594 (10th Cir.), we have stated the requirement that the defendant must knowingly act in furtherance of the conspiracy, and that mere knowledge is not sufficient, and that no guilt can arise merely from association. See also Dennis v. United States, 302 F.2d 5 (10th Cir.). The Second Circuit in United States v. Aviles, 274 F.2d 179 (2d Cir.), has well described the showing which must be made as to the intent by a defendant to participate. See also United States v. Webb, 466 F.2d 190 (10th Cir. 1972).

The principal case discussed by both parties on this appeal is United States

v. Falcone, 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128 (109 F.2d 579 (2d Cir.)). In *United States v. Falcone*, the Supreme Court, as did the Court of Appeals, assumed for the purpose of their decisions that respondents furnished supplies which they knew ultimately reached and were used by persons operating illicit stills. Respondents sold sugar, yeast, and containers, and were indicted for conspiracy along with the operators of some twenty-two stills. The Supreme Court found from the record that there was no proof that respondents had knowledge of the *conspiracy* to operate the stills. The evidence showed that the respondents or some of them were seen talking to some of the defendant distillers on different occasions. One of the respondents was seen in a restaurant patronized by some of the conspirators, and he knew the proprietor. One also was seen talking to one of the distillers who was his brother-in-law. As to two of the respondents, the Court said that the jury could have found that they knew one of their customers was using the purchases from them for illicit distilling, and also stated: "But it could not be inferred from that or from the casual and unexplained meetings of some of respondents with others who were convicted as conspirators that respondents *knew of the conspiracy*." The Court further said that respondents could not " . . . be brought within the sweep of the Government's conspiracy dragnet if they had no knowledge that there was a conspiracy"; also, "[t]hose having no knowledge of the conspiracy are not conspirators, . . . and one who without more furnishes supplies to an illicit distiller is not guilty of conspiracy even though his sale may have furthered the object of a conspiracy to which the distiller was a party but of which the supplier had no knowledge."

In the case before us the act of Steele in providing a pilot by the introduction of Hart to J. R. Skinner is little different than the selling of raw materials for the distilling in Falcone knowing the use to which they would be put.

Also the evidence in Falcone relative to the respondents being seen with the conspirators is similar to the evidence here showing that Steele was in Zoom's Cafe when some of the conspirators were there, or was seen with them there. There was no evidence produced to show that Steele had knowledge of the conspiracy which was charged. The most that can be inferred from Hart's testimony that Steele asked him if he wanted to make money by flying marijuana was that Steele or someone was going to engage in the smuggling. There were no names or indications in Hart's testimony that others were involved or were to become involved. We have this conversation followed some time later by the introduction of Hart in Zoom's Cafe to show Steele's knowledge of this conspiracy, and this is not sufficient under Falcone or the standards in our cases referred to above.

Reversed with direction to grant defendant's motion for acquittal.