UNITED STATES of America,
Plaintiff-Appellee,

v.

Donald Rudolph GARDNER, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Donald Neal Le BOULANGER,
Defendant-Appellant.

No. 72–1509, 72–1510.

United States Court of Appeals,
Ninth Circuit.

March 22, 1973.

Lewis A. Wenzell (argued), Philip DeMassa, of Federal Public Defenders, William J. Zumwalt, San Diego, Cal., for defendant-appellant.

Thomas M. Coffin, Asst. U. S. Atty. (argued), Stephen G. Nelson, Asst. U. S. Atty., Harry D. Steward, U. S. Atty., San Diego, Cal., for plaintiff-appellee.

Before HUFSTEDLER and WRIGHT, Circuit Judges, and LUCAS, District Judge.

LUCAS, District Judge:

These appeals are from appellants' respective criminal convictions for violating the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U. S.C. 801 et seq. Appellants were charged in a four-count indictment of conspiring to import nine ounces of heroin, importing nine ounces of heroin, conspiring to possess with the intention

of distributing nine ounces of heroin, and possessing with the intention of distributing nine ounces of heroin. Appellant Le Boulanger was found guilty on all counts in violation of 21 U.S.C. §§ 952, 960, 963, 841(a)(1) and 846. Appellant Gardner was found not guilty on all counts of the indictment, however, the jury found him guilty of the lesser included offense of simple possession of a controlled substance in violation of 21 U.S.C. 844.

On September 26, 1971, around 11 A. M., appellants entered the San Ysidro, California port of entry in a 1971 Buick, owned by Le Boulanger but driven by Gardner. While inspecting the car's rear trunk, in response to Gardner's declaration of a quantity of plaster of paris, the customs official became suspicious of the appellants' demeanor, and directed their car to the secondary inspection point. The appellants were then escorted to the customs office for personal inspection. Le Boulanger preceded Gardner and the official at an abnormal distance and rate. While that official's attention was directed to Gardner producing his personal effects, the desk official noticed that Le Boulanger had furtively released some objects from his person which later were found to be nine ounces of heroin. A subsequent personal search of Le Boulanger revealed an instrument kit for hypodermic injections and $138.00. A search of Gardner revealed $5.00, two traffic citations, and some miscellaneous papers, one of which revealed Le Boulanger's phone number at his residence in Placerville, California.

Discovery and testimony also revealed that Gardner had performed various menial duties for Le Boulanger at the latter's place of business in Fremont, California. Part of his duties included the driving of his 1971 Buick. Gardner had been employed since March 1971, and had seen Le Boulanger under the influence of what he assumed to be narcotics. He had never questioned him about his use of narcotics because of his status as an employee of Le Boulanger. Le Boulanger testified that they had gone to San Diego at his request to see the San Diego Chargers-Oakland Raiders game, that the trip to Tijuana was for the express purpose of Gardner's visit to a local red-light district, and that while Gardner was so occupied he had driven his car around in the hills, administering one injection during that time. He denied the importation of the heroin, and the discarding of the two packages in the custom's office. Some evidence was introduced that a series of phone calls was made from the San Diego hotel room, however the Government later deemphasized these messages as a basis for its theory that appellants had formed the alleged conspiracy as charged. *See* discussion *infra.*

The sole issue presented in Gardner's case is whether sufficient evidence was presented to sustain the verdict reached by the jury that he was guilty of the lesser included offense of simple possession of the heroin. We hold the evidence to be insufficient, and reverse Gardner's conviction with instructions that the charges be dismissed.

The appellate court may inquire whether the evidence, considered in a light most favorable to the Government, permitted a rational conclusion by the jury that the accused was guilty beyond a reasonable doubt. The test is not whether the evidence must exclude every possibility but that of guilt. United States v. Nelson, 419 F.2d 1237, 1242 (9th Cir. 1969). Given this test, nevertheless, this Court is convinced that the largely circumstantial evidence introduced cannot permit a rational conclusion that Gardner was guilty of simple possession of the heroin beyond a reasonable doubt.

Clearly, the issue is not whether Gardner had actual possession, but whether he had constructive possession, i. e., dominion and control over the heroin at the time in question. The test for the latter in this Circuit is whether

> "One [has] a working relationship or a sufficient association with those having physical custody of the drugs

so as to enable him to assure their production, without difficulty, to a customer . . . But a casual facilitator of a sale, who knows a given principal possesses and trades in narcotics but who lacks the working relationship with that principal that enables an assurance of delivery, may not be held to have dominion and control over the drug and cannot be said to have possession of it." United States v. Barnett, 468 F.2d 1153, 1155 (9th Cir., 1972) quoting Hill v. United States, 379 F.2d 811, 814 (9th Cir., 1967). See Arellanes v. United States, 302 F.2d 603, 606 (9th Cir., 1962).

There are two rather disturbing inconsistencies in the case against Gardner: (1) the jury found insufficient evidence to convict him of the four counts charged, yet found him guilty of simple possession; and (2) the law supporting the verdict reached would have him exercising the requisite dominion and control over the heroin at the time in question, notwithstanding a relatively complete subordination to Le Boulanger as his servant. These inconsistencies are unsupportable.

■ Considerable deference must be attributed to the jury's assessment of a defendant's trial demeanor, and of his overall testimony as viewed in the context of the entire case presented. However, the ultimate findings suggest that the jury had some doubts about Gardner's knowledge of the heroin in relationship to whatever power he exercised over the final disposition of that contraband which had been concealed on Le Boulanger's person.

Gardner's role at the custom's checkpoint was one of complete subordination to the authority of Le Boulanger. This subordination was a fundamental aspect of the original excursion to San Diego, which was instigated and financed in its entirety by Le Boulanger. This arrangement was consistent with the prior employment pattern of Gardner performing as Le Boulanger's chauffeur, as well as his janitor at a Fremont billiard parlor owned by Le Boulanger. The complete assumption of responsibility by Le Boulanger over Gardner while chauffeuring his car was emphasized by the former's payment of the latter's traffic violations, when incurred under those circumstances. These factors, which epitomized an unequivocal and complete master-servant relationship, preclude the requisite inference that, beyond a reasonable doubt, Gardner was able to determine or otherwise influence Le Boulanger's disposition of the heroin. Since Le Boulanger's authority over Gardner was so clearly established as to disallow any such influence by the latter over the eventual disposition of the heroin, the element of possession under 21 U.S.C. 844 has not been met, and Gardner's conviction thereunder is therefore without sufficient foundation. See United States v. Flom, 464 F.2d 554, 555 (9th Cir., 1972); see also Feldstein v. United States, 429 F.2d 1092, 1094–1095 (9th Cir., 1970); rehear. denied (1970); cert. denied 400 U.S. 920, 91 S.Ct. 174, 27 L.Ed.2d 159 (1970); rehear. denied 400 U.S. 1002, 91 S.Ct. 452, 27 L.Ed.2d 454 (1971).

■ Furthermore, the employment relationship coupled with the incidents of the trip to San Diego does not lend itself to the conclusion that a joint venture was contemplated by the parties. In this respect, Gardner stands on firmer ground than his analogous counterpart, Lonnie, whose conviction was reversed in Murray v. United States, 403 F.2d 694 (9th Cir., 1968); rehear. denied (1969). Lonnie's conviction was reversed on grounds of insufficient evidence to establish constructive possession of the heroin, notwithstanding the facts that he had instigated, financed and substantially controlled the actual logistics for the trip to Mexico. In this case, Gardner was at best a "casual facilitator" of Le Boulanger's designs, neither instigating, financing, nor determining the travel arrangements for the trip. Gardner participated as a mere chauffeur, not as an equal participant.

(But for his unilateral desire to go to Tijuana, Gardner had nothing to say about the itinerary, and even this endeavor was subject to and dependent upon Le Boulanger's acquiescence in providing the transportation.) A fortiori, neither is an inference allowable that Gardner was embarked upon a joint venture simply to procure narcotics, since the record clearly demonstrates that he had no independent voice in the *joint* activities of the two men. *Cf.* Eason v. United States, 281 F.2d 818, 820 (9th Cir., 1960); rehear. denied (1960); *see* United States v. Bonds, 435 F.2d 164 (9th Cir., 1970). Nor can whatever assumption Gardner may have had and made as to Le Boulanger's prior usage of drugs shore up a joint venture theory in light of the total circumstances considered as a whole. *See* Evans v. United States, 257 F.2d 121, 126 (9th Cir., 1958); rehear. denied (1958); cert. denied 358 U.S. 866, 79 S.Ct. 98, 3 L.Ed.2d 99 (1958); rehear. denied 358 U.S. 901, 79 S.Ct. 221, 3 L.Ed.2d 150 (1958).

Accordingly, Gardner's conviction of simple possession of a controlled substance, in violation of 21 U.S.C. 844, is reversed, and the charges against him are to be dismissed.

■ The issues presented in Le Boulanger's case are: (1) whether sufficient evidence was presented to sustain the verdict that he was guilty of the conspiracy charges in counts one and three, particularly in light of the jury's exculpation of Gardner on the same counts; (2) whether the trial court erred in not requiring the Government to elect between counts two and four, on the theory that the element of possession in count four was merely incidental to the importation charge in count two; and (3) whether appellant's remedy for the alleged error described in the second issue lies in an appropriate motion under Rule 35, Fed.R.Crim.Proc. The first issue concerns a corollary question whether the Court is relieved from considering Le Boulanger's appeal as to the third and fourth counts under the con-

current sentence doctrine inasmuch as he did not contest the conviction under the second count and the sentence thereunder is concurrent with the former two. United States v. Jones, 446 F.2d 12, 13 (9th Cir., 1971). Appellant contested the conviction under the first count of conspiring to import the narcotics (which resulted in an additional fine) thus insofar as the conspiracy element is given the requisite consideration it applies with equal force to count three, the doctrine notwithstanding. The doctrine is invoked in its entirety, however, with respect to the conviction under count four, the Court declining to pass upon the issues raised thereunder as a result of the sentence under count two. Consequently, the last two issues are rendered substantially moot.

■ The first issue raises the sufficiency of the Government's case, based upon circumstantial evidence, that Le Boulanger had a third cohort, an "unknown" conspirator. Circumstantial evidence is not less probative than direct evidence, and, in some instances, is even more reliable. United States v. Nelson, *supra* 419 F.2d at 1239. However, the application of this proposition is dependent upon the particular nature of the individual case.

■ It has been determined in dicta that a conspiracy requires a plurality of actors, and that an acquittal of one of two conspirators operates as an acquittal of the other. *See* Lubin v. United States, 313 F.2d 419, 423 (9th Cir., 1963); rehear. denied (1963). It has also been determined that the requisite plurality of actors can be met if the indictment charges a conspiracy among "specifically named defendants and other persons unknown to the grand jury," and if at trial "it is shown by *substantial evidence*" that parties unknown at the time of the indictment had entered into the alleged conspiracy, and that one or more of the overt acts alleged were in fact committed by a member of the conspiracy. Didenti v. United States, 44 F.2d 537, 538 (9th Cir., 1930) (emphasis

added); *see also* Romontio v. United States, 400 F.2d 618, 619 (10th Cir., 1968); rehear. denied (1968).

█ The circumstantial evidence which was adduced in *Didenti* is totally distinguishable in character and weight to that raised in the instant case. In *Didenti*, the Government was not only able to locate and identify two other co-conspirators (Guarrazi and Pinsetto) but was able to establish, by testimony from one of the acquitted conspirators named in the indictment, the *substantial* complicity of those two co-conspirators in the unlawful still operation. In contrast, the existence of a "third," "unknown" conspirator in this case is, at best, a mere inference allowable from a relatively barren structure of circumstantial evidence advanced by the Government, and it is essentially devoid of any *substantial* foundation in fact. Le Boulanger did make several phone calls from the San Diego hotel, but the Government could not successfully trace them to a "third" cohort. And he did enter the border checkpoint with a large amount of heroin, but the logical presumption that it originated from a source in Tijuana only creates an inferential beginning, not a firm conclusion. Thus, these factors which readily create a *framework* for the Government's conspiracy case are not the kind of circumstantial evidence which can supply the requisite *foundation* for a conspiracy conviction. The inference which the Government would have the jury draw as to the requisite plurality of actors, the presence of a "third" conspirator, is at once "too speculative" and "remote" to allow a conviction beyond a reasonable doubt that Le Boulanger was engaged in a narcotics conspiracy to import the heroin. *See* United States v. Nelson, *supra* 419 F.2d at 1240; *see also* United States v. Steele, 469 F.2d 165, 168–169 (10th Cir., 1972). The inherent weakness of this tripartite conspiracy theory advanced on appeal was emphasized by the absence in the Government's closing argument before the jury of any reference to a "third" conspirator. In

the final analysis, the Government apparently based its case upon Le Boulanger and Gardner's complicity as the foundation for its conspiracy charges. The Government's conspiracy theory is wholly unsupported by "substantial evidence" once Gardner is removed from the conspiracy equation, and perforce it must fail. Thus, Le Boulanger's convictions under the conspiracy counts, one and three, are without sufficient foundation, and cannot stand.

Accordingly, Le Boulanger's convictions under counts one and three are reversed, and those counts under the indictment are to be dismissed. The Court refrains from passing upon the conviction under count four under the concurrent sentence doctrine. Le Boulanger's conviction on count two is affirmed.

The judgment as to Gardner's conviction is reversed.

The judgment as to Le Boulanger's conviction under counts one and three is reversed.

The case is remanded to the District Court for proceedings consistent with this opinion.