**UNITED STATES of America,
Appellant,**

v.

**John Brett ALLEN.**

No. 79–1263.

United States Court of Appeals,
Third Circuit.

Argued Nov. 15, 1979.

Decided Feb. 5, 1980.

Peter F. Vaira, U. S. Atty., Walter S. Batty, Jr., Asst. U. S. Atty., Chief Appellate Division, William E. Ball (argued), Asst. U. S. Atty., Philadelphia, Pa., for appellant.

Thomas Colas Carroll (argued), Carroll, Creamer, Carroll & Duffy, Philadelphia, Pa., for appellee.

Before SEITZ, Chief Judge, ALDISERT, Circuit Judge, and TEITELBAUM, District Judge.[*]

### OPINION OF THE COURT

SEITZ, Chief Judge.

The government appeals from the district court's grant of a new trial pursuant to Allen's motion for collateral relief under 28 U.S.C. § 2255 (1976) from his conviction for conspiring to possess marijuana with the intent to distribute it in violation of 21 U.S.C. § 841(a)(1) (1976).[1]

### I. *Factual Background*

The facts in this case revolve around a telephone answering service, a Ryder rent-a-truck, and the Dusselfink Motel in Pottsville, Pennsylvania. On December 15, 1975, a person using the name "Thomas J. Meador" rented a truck from Ryder in Colorado. The truck was registered in Oregon with license plates from that state. On December 18, two individuals registered at the Dusselfink Motel in Pottsville, signing the names "Tom Meador" and "Richard Cooper." They were given room 242. The motel records indicate a Ryder truck with Oregon license plates was listed as belonging to the occupants of room 242.

December 18 was a busy day. At about 4 p. m. Colorado time, Allen left a message with his answering service, which was located in Colorado. The message was that if a "Jeff Stewart" should call, the service should tell him to go to Pottsville, not Pottstown, and check into the Dusselfink Motel. Stewart then should call 717–366–2723 and ask for Mr. Holiday.[2] In addition, the service was to tell Stewart that Allen was on his way.

At 6:49 p. m., Colorado time, someone using the name "Jeff Stewart" called the answering service. He asked the service to tell Allen to call 717–385–2407, room 242. That number is the telephone number for the Dusselfink Motel. The motel's records indicate that a call was made to the answering service.

Sometime later that evening, an unidentified male came to the Dusselfink Motel registration desk and asked for room 242. Shortly thereafter, federal agents who were staking out the motel observed an individual run through the parking lot. The Ryder truck then was seen being driven away.

Early the next morning, December 19, police arrested Allen at a cabin near Deer Lake, Pennsylvania. The Ryder truck now was parked at the cabin. In the pocket of the jacket worn by Allen at his arrest, the officers found a key that opened the padlock on the truck and the ignition key for the truck. They discovered 1,100 pounds of marijuana in the back of the truck.

Soon after, the police arrested Meador and Cooper in room 242. In the room, the police found a piece of paper with the number 366–2723 written on it, the number that Allen asked his answering service to give to Jeff Stewart.

Allen, Meador, and Cooper were indicted and convicted of conspiring to possess marijuana with the intent to distribute it. All three directly appealed to this court. Meador's conviction was affirmed without opinion. *United States v. Meador*, 559 F.2d 1209 (3d Cir. 1977). Although Allen's conviction was affirmed, his case was remanded for resentencing. *United States v. Allen*, 566 F.2d 1193 (3d Cir. 1977), *cert. denied*, 435 U.S. 926, 98 S.Ct. 1491, 55 L.Ed.2d

---

[*] Honorable Hubert I. Teitelbaum, United States District Judge for the Western District of Pennsylvania, sitting by designation.

1. The conspiracy charge was count 1 of the indictment. Count 2, which charged Allen with the substantive offense of possession with intent to distribute, was dismissed after his conviction on count 1.

2. A call to this telephone number from the Dusselfink Motel would be a local call. Thus the record contains no evidence whether any calls from the motel to the number left by Allen with his service were ever made.

519 (1978). Finally, Cooper's conviction was reversed for lack of sufficient evidence that he participated in a Meador-Allen conspiracy. *United States v. Cooper*, 567 F.2d 252 (3d Cir. 1977).

On remand, the district court resentenced Allen. Allen then made a motion under § 2255 for a new trial, arguing that his conviction was not based on sufficient evidence, a point he did not raise in his direct appeal to this court.[3] The district court granted the motion, and the government took this appeal.

## II. *Jurisdiction*

■ Although the parties did not brief the issue, we must initially consider our own jurisdiction to hear the government's appeal. Section 2255 provides: "An appeal may be taken to the court of appeals from the order entered on the motion as from a final judgment on application for a writ of habeas corpus." 28 U.S.C. § 2255 (1976). As to normal habeas corpus cases, an appeal lies from the final order of the habeas court. *Id.* § 2253. In general, this has been read to mean that normal principles of finality in cases involving 28 U.S.C. § 1291 (1976) apply to appeals involving habeas corpus and § 2255. *See, e. g., United States ex rel. Cleveland v. Warden, New Jersey State Prison*, 544 F.2d 1200, 1202 & n.4 (3d Cir. 1976).

In a direct criminal appeal, the government may only appeal orders dismissing an indictment or information or suppressing evidence. 18 U.S.C. § 3731 (1976). Moreover, in cases of direct appeal, an order granting a new trial normally is not final and hence not subject to appellate review. The United States Court of Appeals for the Fifth Circuit has held, however, that the grant of a new trial is a final order in the context of a § 2255 proceeding that permits the government to appeal. *See United States v. Dunham Concrete Products, Inc.*, 501 F.2d 80 (5th Cir. 1974), *cert. denied*, 421 U.S. 930, 95 S.Ct. 1656, 44 L.Ed.2d 87 (1975). For several reasons, we agree with the result reached by the Fifth Circuit and hold that the grant of a new trial is a final, appealable order in proceedings under § 2255.

First, the language of § 2255 indicates that a grant of a new trial is a final, appealable order. Paragraph 6 of § 2255 provides that an appeal may be taken "from the order entered on the motion." Paragraph 3 of § 2255 states exactly what orders may be entered if the motion is granted: "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him *or grant a new trial* or correct the sentence as may appear appropriate." (emphasis supplied). As in all cases of statutory construction, different portions of the same statutory provision should be read in conjunction with each other. Reading paragraphs 3 and 6 together, because the grant of a new trial is an "order entered on the motion" within the meaning of paragraph 6, it would seem that Congress contemplated appeals from the grant of a new trial.[4]

This reading of paragraphs 3 and 6 is supported by the general analytical approach of cases dealing with the meaning of final orders under § 2255. The crucial question in these cases in determining finality is whether the district court has entered one of the orders specified in paragraph 3 of § 2255. For example, in *Andrews v. United States*, 373 U.S. 334, 83 S.Ct. 1236, 10 L.Ed.2d 383 (1963), the defendant asked the § 2255 court to resentence him. Although the court decided to grant the mo-

---

**3.** We express no view on what effect Allen's failure to raise this point on direct appeal has on the availability of § 2255 relief.

**4.** Section 2255 also states the appeal shall be "as from a final judgment on application for a writ of habeas corpus." When a state prisoner is successful on his petition for habeas, the possibility of retrial by the state does not impugn the finality of the order. *See United States ex rel. Thomas v. State of New Jersey*, 472 F.2d 735, 742 (3d Cir.) (conditional grant of habeas corpus where state may release or retry defendant is final), *cert. denied*, 414 U.S. 878, 94 S.Ct. 121, 38 L.Ed.2d 123 (1973). *See also Pitchess v. Davis*, 421 U.S. 482, 490, 95 S.Ct. 1748, 1753, 44 L.Ed.2d 317 (1975) (per curiam) (habeas corpus court has no jurisdiction over retrial of state prisoner).

tion, it did not enter an order resentencing the defendant. The government appealed, and the Supreme Court held that the failure to enter the order meant there was no appealable order. Thus the crux in *Andrews* was whether the § 2255 court actually had entered the specific order requested. As already noted, the district court here entered an order expressly permitted by § 2255, the action missing in *Andrews*.

Second, the nature of § 2255 proceedings supports the finality of the order here. As opposed to being an integral part of the criminal trial, "a proceeding under Section 2255 is an independent and collateral inquiry into the validity of the conviction." *United States v. Hayman*, 342 U.S. 205, 222, 72 S.Ct. 263, 274, 96 L.Ed. 232 (1952). *Accord, e. g., Heflin v. United States*, 358 U.S. 415, 418 n.7, 79 S.Ct. 451, 453, 3 L.Ed.2d 407 (1959); *Neely v. United States*, 546 F.2d 1059, 1065 (3d Cir. 1976). *Cf. Andrews v. United States*, 373 U.S. 334, 338, 83 S.Ct. 1236, 1239, 10 L.Ed.2d 383 (1963) (government appeals under § 2255 are not subject to the Criminal Appeals Act).[5]

The significance of the separate nature of a § 2255 proceeding lies in its impact on the district court's jurisdiction. In a typical case, the jurisdictional basis for the original trial, the grant of a new trial, and the retrial remains the same throughout. The same is not true with § 2255. That section confers jurisdiction for a limited purpose and nowhere does it grant the § 2255 court authority to retry the defendant. That simply is not one of the "orders on the motion" listed in paragraph 3. All the § 2255 court can do is grant a motion to retry. Once it does that, jurisdiction to retry the defendant shifts to an entirely severable basis. *E. g.*, 18 U.S.C. § 3231 (1976). Unlike the typical case already postulated, the jurisdictional basis for the trial, grant of a new trial, and retrial is not the same.

In short, once the § 2255 court grants a motion for a new trial, its jurisdiction as a § 2255 court ends and there is "nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). Hence the separate nature of § 2255 proceedings means that the grant of a new trial in this context is a final order.

Moreover, the fact that the sentencing judge and the § 2255 judge are the same person is not dispositive. This merely reflects a desire to relieve the case-load burden of judges located in districts containing federal prisoners. *See generally United States v. Hayman*, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232 (1952).

Nor is *Collins v. Miller*, 252 U.S. 364, 40 S.Ct. 347, 64 L.Ed. 616 (1920), to the contrary. There, the British consul applied to a district court for the extradition of Collins, presenting three affidavits as the basis for extradition. The district court held a hearing only on the first affidavit, found it sufficient for extradition, ordered Collins into custody, and certified its findings to the Secretary of State. Collins then brought a petition for habeas corpus before a different judge, who partially granted the writ and ordered the first court to hold hearings on the other two affidavits. *See id.* at 367–68, 40 S.Ct. at 348. When Collins and the consul appealed, the Supreme Court dismissed for lack of a final order.

The Court first noted that the action of the habeas court was similar to the order of an appellate tribunal reversing and remanding to another court. *Id.* at 369, 40 S.Ct. at 349. Extending the analogy, the Court concluded: "The prisoner remained under the authority of the [habeas corpus court] . . . and as the writ of *habeas corpus* had not been disposed of there so far as concerned the detention on two of the three affidavits, the decision below on that branch of the case was not final." *Id.* at 370, 40 S.Ct. at 349.

---

5. Until recently, § 2255 cases were given a separate civil number. *See Evans v. United States*, 387 F.2d 160, 161 (3d Cir. 1967), *cert. denied*, 391 U.S. 968, 88 S.Ct. 2039, 20 L.Ed.2d 881 (1968). Now the § 2255 proceeding retains the original criminal docket number and is filed along with the criminal papers. Nevertheless, the clerk's office lists the case as a civil matter for the purpose of case-load statistics.

*Collins* is distinguishable for two reasons. In the first place, it rests on realities of extradition procedure that have no applicability here. Application for extradition can be made to a judge or a magistrate. *See* 18 U.S.C. § 3184 (1976). There is no direct appeal from that decision, the only relief being extremely limited review through habeas corpus. The analogy to a remand in *Collins* therefore is very instructive. Where the habeas corpus court sends the case to the extraditing judge or magistrate, that often works just like the usual remand with the habeas court retaining jurisdiction. *See, e. g., Jhirad v. Ferrandina,* 536 F.2d 478, 485–86 (2d Cir.), *cert. denied,* 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976). Under normal finality principles, a remand by the district court is not a final order. *E. g., Barfield v. Weinberger,* 485 F.2d 696 (5th Cir. 1973) (per curiam) (remand to HEW not final). Here, by contrast, the § 2255 court does not remand to a lower court to retry the defendant. As already noted, jurisdiction shifts to an entirely different statutory basis at the same level in the judicial hierarchy, and the § 2255 court does not retain jurisdiction over the prisoner or the issues raised in his petition.

Moreover, only one of the three affidavits in *Collins* had been disposed of. 252 U.S. at 370, 40 S.Ct. at 349. *See Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 432 & n.3, 76 S.Ct. 895, 897 & n.3, 100 L.Ed. 1297 (1956). Here, the district court has disposed of the claim in the manner requested by granting a new trial. Therefore, this is not a case of partially resolved multiple claims.

Finally, in addressing the question of finality, it is appropriate for us to consider pragmatic factors. *See, e. g., Gillespie v. United States Steel Corp.,* 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964). Here, if the government actually attempted to retry Allen, it is possible the trial might be barred by the double jeopardy clause. *See Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). If such were the case, a matter we do not decide, the district court's grant of a new trial would be meaningless. We decline to adopt a reading of finality that might render an order permit-

ted by § 2255 into a nullity. Moreover, in civil cases generally where a new trial is granted, the judgment entered after retrial is fully subject to appellate review. Here, if the double jeopardy clause bars retrial, then the probable effect would be to preclude review at any time of the important substantive issue presented in this appeal.

Accordingly, we conclude that the grant of a new trial in this § 2255 proceeding is a final, appealable order.

## III. *Sufficiency of the Evidence*

The district court's theory was that the evidence concerning the involvement of Meador and·Cooper in a conspiracy was the same. Even though Meador's conviction was affirmed on direct appeal, the court then reasoned from its reading of the evidence that our holding in *Cooper, supra,* that there was insufficient evidence of Cooper's participation in a Meador-Allen conspiracy meant that there was insufficient evidence to convict Meador. The next step in the court's analysis was that because there was insufficient evidence as to Cooper and Meador, that meant there was no one left with whom Allen could conspire. Relying on the general rule that there must be evidence of two or more conspirators, the district court concluded that the evidence was insufficient as to Allen without evidence that Meador or Cooper conspired with him.

On appeal, the government has abandoned its argument that federal prisoners may not raise an issue as to the sufficiency of the evidence in a § 2255 proceeding. *Cf. Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (state prisoners may raise such claims). *See generally Kaufman v. United States,* 394 U.S. 217, 226–31, 89 S.Ct. 1068 (1969). Given that we reverse the district court, we will assume, without deciding, that appellee's claim was properly cognizable under § 2255. The government instead contends that the evidence as to Meador was different from the evidence as to Cooper. In addition, it points out that Meador's conviction still stands and that the rule used by the district

court does not apply where at least two conspirators are convicted. *E. g., United States v. Musgrave,* 483 F.2d 327, 333 (5th Cir.), *cert. denied,* 414 U.S. 1023, 94 S.Ct. 447, 38 L.Ed.2d 315 (1973). We need not reach these questions, however, because the district court erred in the legal rules it applied to the facts.

■ The indictment here states: "JOHN BRETT ALLEN, RICHARD JOHN COOPER, and THOMAS J. MEADOR, did knowingly and unlawfully conspire, combine, confederate and agree together, and with each other, *and with other persons known and unknown to this Grand Jury . . . .*" (emphasis supplied). In such a case, "the identity of the other members of the conspiracy is not needed, inasmuch as one person can be convicted of conspiring with persons whose names are unknown." *Rogers v. United States,* 340 U.S. 367, 375, 71 S.Ct. 438, 443, 95 L.Ed. 344 (1951), *citing Pomerantz v. United States,* 51 F.2d 911, 913 (3d Cir. 1931). This rule has been applied to conspiracies involving drug activity. *E. g., United States v. Rivera Diaz,* 538 F.2d 461, 465 (1st Cir. 1976).

Thus the question is not whether there was sufficient evidence that Allen conspired with Meador and/or Cooper, but whether there was sufficient evidence that he conspired with some other person. Here, the evidence shows the following: Allen left a message with his answering service to tell Jeff Stewart to go to the Dusselfink Motel in Pottsville and call a certain number. Allen also said to tell Stewart that he was on his way. Someone using the name Stewart then called the answering service and left a message to call a number and ask for room 242. That number was the phone number at the Dusselfink Motel, and the motel's records indicate a call from the motel to Allen's answering service. In addition, a piece of paper was found in room 242 with a number written on it, and that number was the one left by Allen with his service.

Later that same day, someone came to the motel and asked the whereabouts of room 242. The clerk at the registration desk did not recognize him as either of the two persons registered as occupants of the room. A Ryder truck in the lot listed in motel records as belonging to the occupants of room 242 then was driven away. Early the next morning, Allen was arrested in possession of the keys to the truck's padlock and ignition. The marijuana was in the back of that truck.

■ Even assuming absolutely no involvement of Meador and Cooper in a conspiracy, these events show the participation of at least one person other than Allen in two respects. First, the call by "Stewart" to the answering service and the paper with the number on it in room 242 alone indicate the involvement of a second person, unless we are to believe that Allen left messages for himself and then called to receive them. Second, Allen somehow got control of keys to a truck that, as far as the record shows, he had no physical connection with prior to its arrival at the Dusselfink Motel. It defies reason to say that this evidence is insufficient to show that Allen did not act alone.[6] There was ample evidence from which a "rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia, supra,* 99 S.Ct. at 2792 (footnote omitted).

Accordingly, we hold there was sufficient evidence that Allen conspired with a second person.

IV.

The judgment of the district court will be reversed.

---

6. This case is thus quite different from *United States v. Gardner,* 475 F.2d 1273 (9th Cir.), *cert. denied,* 414 U.S. 835, 94 S.Ct. 178, 38 L.Ed.2d 70 (1973), where the court held the evidence of a conspiracy insufficient because the government could neither trace phone calls made by the defendant nor show from whom defendant bought the drugs. *See id.* at 1278. Here, we not only have traced calls, we have records of actual messages and eyewitnesses to some of the events.