**UNITED STATES of America**

**v.**

**Norman DANSKER, Joseph Diaco, Steven Haymes, Warner Norton, Donald Orenstein, Nathan L. Serota, Andrew Valentine, Investors Funding Corporation of New York and Valentine Electric Company.**

**Appeal of Joseph DIACO.**

**No. 78–1370.**

United States Court of Appeals, Third Circuit.

Argued June 20, 1978.

Decided July 14, 1978.

As Amended Aug. 8, 1978.

See also D.C., 449 F.Supp. 1057.

---

Frederic C. Ritger, Jr., South Orange, N. J., for appellant.

Robert J. Del Tufo, U. S. Atty., Newark, N. J., for appellee; Maryanne T. Desmond, Chief, Appeals Div., Newark, N. J., on brief.

Before SEITZ, Chief Judge, and ALDISERT and GARTH, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

The principal issue presented for decision requires us to construe the 120-day time limitation of Fed.R.Crim.P. 35 in a convoluted criminal proceeding in which a motion for a new trial was filed in the district court after appellant Joseph Diaco had exhausted a direct appeal from his conviction. The post-appeal new trial motion was grounded upon newly discovered evidence. After exhausting his appeal from the denial of that motion, he moved for reduction of sentence; the district court held that because the motion was unseasonably filed under Rule 35, the court was without jurisdiction to reduce sentence. We affirm.

### I.

Various aspects of this case have been before this court on three previous appeals and before the Supreme Court on two occasions.[1] Briefly summarized, the background includes the following facts.

### A.

Appellant Diaco and co-defendants Dansker, Haymes, Orenstein and Valentine were convicted of two substantive violations of 18 U.S.C. § 1952 for attempting to bribe two state officials, and of one count of conspiracy to commit those offenses. Each was sentenced to concurrent terms of five years imprisonment and a fine of $10,000 on each of the three counts. On appeal of their convictions, they raised for the first time the allegation that the government violated the rule of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by withholding information regarding James Silver, whose testimony might have

---

1. *United States v. Dansker*, 537 F.2d 40 (3d Cir. 1976), *cert. denied* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977); *United States v. Dansker*, 561 F.2d 485 (3d Cir. 1977); *United States v. Dansker*, 565 F.2d 1262 (3d Cir. 1977), *cert. dismissed* 434 U.S. 1052, 98 S.Ct. 905, 54 L.Ed.2d 805 (1978).

impeached a key government witness, Arthur Sutton. This court's review resulted in reversal of the convictions of all co-defendants on the conspiracy charge, affirmance of their convictions of one substantive count and vacation of their convictions on the second substantive count. The court did not consider the merits of the *Brady* claim but suggested that a motion for a new trial under Fed.R.Crim.P. 33 would enable the district court to evaluate the *Brady* claim in the first instance. After the Supreme Court denied certiorari in the direct appeal on January 10, 1977, all co-defendants moved for a new trial because of the alleged *Brady* violation and each moved for a reduction of sentence pursuant to Fed.R. Crim.P. 35. Without holding an evidentiary hearing, on June 3, 1977, the district court denied the motions for new trial and for reduction of sentence. The defendants again appealed to this court. The results were that 1) denial of sentence reduction was affirmed; 2) Dansker, Haymes, Orenstein and Valentine were adjudged to be entitled to an evidentiary hearing on their *Brady* claim; and 3) Diaco was held to be ineligible for a hearing on the alleged *Brady* violation because other evidence of his guilt was overwhelming. *See United States v. Dansker, supra,* 565 F.2d at 1264 n.7. Their petition for certiorari on the denial of sentence reduction was dismissed on January 24, 1978, pursuant to Supreme Court Rule 60.

While their petition for certiorari was pending before the Supreme Court, all co-defendants filed new Rule 35 motions for reduction of sentence. The district judge who heard Diaco's motion held that the court was without jurisdiction because the motion was untimely under Rule 35. A different district judge heard the motions of Dansker, Haymes, Orenstein and Valentine, and reduced their sentences from five years to six months imprisonment and three years probation. Diaco, understandably, has appealed the district court's ruling on his motion.

B.

The participation of two judges in the sentencing of the defendants stems from an issue raised in prior appeals of this case in which it was contended that the trial judge should have been disqualified for his investigation of another co-defendant during the judge's previous service as a United States Attorney. That contention was rejected at 565 F.2d 1266–67 and at 537 F.2d 52–54, where this court held that the judge's prior involvement was too attenuated to require disqualification. Nevertheless, the judge voluntarily removed himself from further participation in the *Brady* hearing for Diaco's co-defendants which had been mandated by the same opinion upholding the judge's qualification. In the judge's words, the co-defendants were "using their alleged reluctance to have me preside at the *Brady* hearing to delay further the evidentiary hearing, its determination, and, if the determination was against them, their incarceration." App. 160a–161a. His withdrawal was therefore simply to prevent further delay by four defendants who were free on bail some 2½ years after conviction and sentencing. Consequently, the motions for reduction of sentence on behalf of Dansker, Haymes, Orenstein and Valentine were heard by a different judge, one who had not previously participated in the case. At their hearing, it was stipulated by the government that "Rule 35's time limits do not preclude a reconsideration of the sentence at this time", App. at 105a, apparently opting to terminate the proceedings with a resentencing rather than with further consideration of the *Brady* claim. Disarmed by the assurance of all counsel that the court had jurisdiction, the judge acted on the assumption that it was within his power to reduce the sentences.

Diaco's contemporaneous motion for sentence reduction, however, was heard by the original trial judge because Diaco's *Brady* claim had been denied by this court in an opinion stating that he was not entitled to a *Brady* hearing. The court determined that it was without jurisdiction under Rule 35 and, alternatively, that relief would have been denied on the merits in any event.

C.

Diaco's appeal presents four arguments in support of his contention that the court

erred. First, he asserts that his post-appeal *Brady* claim motion for new trial, appealed to this court and to the Supreme Court, was so inexorably intertwined with his direct appeal that the 120-day limit of Rule 35 must be calculated from the date the district court received our mandate in the second appeal, October 28, 1977, not from January 10, 1977, the date his direct appeal was terminated by denial of certiorari. Second, because the government agreed that the court had jurisdiction to entertain his co-defendants' motion for reduction of sentence filed at about the same time as his motion, the government is now estopped from challenging Rule 35 jurisdiction. Third, the present disparity of the sentences trenches upon his constitutional right to due process and equal protection of the laws. Finally, Diaco contends that the trial judge's withdrawal from his co-defendants' proceedings should have precluded his further participation in Diaco's hearing.

## II.

Rule 35 provides in relevant part:

The court may reduce a sentence within 120 days after the sentence is imposed, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction.

The rule must be considered in conjunction with Criminal Rule 45(b)(2), which provides that "the court may not extend the time for taking any action under Rules 29, 33, 34 and 35, except to the extent and under the conditions stated in them." Thus, "[t]he 120-day time limitation stated in Rule 35 'is jurisdictional and cannot, under any circumstances, be extended by order of the court. Criminal Rule 45(b); *United States v. Robinson*, 361 U.S. 220, 226, 80 S.Ct. 282, 4 L.Ed.2d 259 (1960).'" *United States v. Robinson*, 457 F.2d 1319 (3d Cir. 1972) (citations omitted).

Appellant seems to concede as much but argues that his motion for a new trial was tantamount to a continuing part of his direct appeal from conviction. It would follow that the termination of the appellate proceedings on the new trial motion, rather than the termination of the direct appeal, would activate Rule 35's time limitation.

### A.

■ Our beginning point is a recognition that Diaco's original, timely, May 5, 1977, motion for reduction of sentence could not be revitalized by the mere act of filing subsequent motions beyond the 120-day period which began January 10, 1977. The subsequent motion could not "relate back to . . . . [the] original timely motion . . . and the court . . . lacked power to consider the new motion." *United States v. United States District Court*, 509 F.2d 1352, 1356 (9th Cir.), *cert. denied sub nom. Rosselli v. United States*, 421 U.S. 962, 95 S.Ct. 1949, 44 L.Ed.2d 448 (1975). Thus, if jurisdiction is to be found, it must be based on a determination that appellant's motion for a new trial should be considered an integral part of his direct appeal from final judgment.

The *Brady* claim which formed the substance underlying the post-appeal motion for new trial addressed important questions relating to the fairness of the trial. The government allegedly failed to disclose to Diaco and his co-defendants the existence of one James Silver and the contents of revelations made by him to government prosecutors. Allegedly, if Silver had testified at trial, he might have seriously undermined the credibility of a key government witness, Arthur Sutton. Such allegations, if proved, might well require a new trial.

There is no doubt that if a motion for new trial had been made on the basis of the *Brady* claim *before* the direct appeal, denial of the motion would have been reviewed as an issue properly a part of the direct appeal. But if we were to accept Diaco's argument that his motion for a new trial should be deemed to have merged with his direct appeal, we would have to conclude that the basis of the new trial motion was so important or fundamental that it must

be treated differently from other collateral appeals.

### B.

We perceive neither a jurisprudential nor a prudential basis to confuse a direct appeal from final judgment, specifically delineated in Rule 35, with an appeal of a collateral issue contained in a motion for a new trial filed *after* appellate review affirming the final judgment.

Rule 33, governing motions for new trials, provides in relevant part:

A motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment, but if an appeal is pending the court may grant the motion only on remand of the case. A motion for a new trial based on any other grounds shall be made within 7 days after verdict or finding of guilty or within such further time as the court may fix during the 7-day period.

Thus, the clear language of the rule describes two types of motions for a new trial: one that may be made "after verdict or finding of guilty" and before final judgment; the other, after final judgment. Because Diaco's new trial motion, of necessity, belonged in the latter category, it is conceptually impossible to equate the final judgment with the ultimate judicial disposition of a new trial motion that was first filed after final judgment. They are two separate ingredients in the procedural brew.

The jurisprudential analysis aside, we are persuaded that to accept appellant's interpretation is to stand the time restraint of Rule 35 on its head. To accept his contention would be to approve a procedure whereby any defendant, within two years of final judgment, could make a Rule 33 new trial motion bottomed on allegations of newly discovered evidence. He or she would then have an additional 120 days after final review of the decision on the new trial motion to file a Rule 35 sentence reduction motion. Given the delays of dis-

trict court hearings and appellate review, the 120-day limitation could be stretched to many years.

The Ninth Circuit has adopted the reasoning of Professor Moore, as do we, that "[s]ome limitation on the court's power seems to be necessary, for after a lapse of time the peculiar ability of the court to determine sentence gives way to the presumably greater competence, and knowledge, of the penal authorities."[2] Additionally, the district court in the case at bar was impressed by the Ninth Circuit's observation that "some limitation is necessary to protect the district court judge from continual importunities while the defendant is serving his sentence." *United States v. United States District Court, supra,* 509 F.2d at 1356 n. 6; *see* District Court Opinion at 50a.

### C.

It should be obvious that the interpretation urged by appellant runs counter to policy considerations of the Judicial Conference of the United States, the Supreme Court and Congress in promulgating Rule 35. The object of the rule was to limit, and to limit severely, the district courts' jurisdiction—no doubt for substantially the same reasons that support enforcement of the time restraints contained in Rule 33. To illustrate, we refer to the Supreme Court's denial that a district judge had authority to grant a new trial motion beyond the 5-day period (now 7 days) provided in Rule 33, in *United States v. Smith,* 331 U.S. 469, 67 S.Ct. 1330, 91 L.Ed. 1610 (1947). Speaking through Justice Jackson, the Court reasoned:

Support for the interpretation urged by respondent rises from fear of miscarriage of justice. New trials, however, may be granted for error occurring at the trial or for reasons which were not part of the court's knowledge at the time of judgment. For the latter, the Rules make adequate provision. Newly-discovered evidence may be made ground for motion

---

**2.** 8A J. Moore, Federal Practice Par. 35.02 at 35–4 n. 4 (2d ed. 1968).

for new trial within two years after judgment. Rule 33. For the former, *habeas corpus* provides a remedy for jurisdictional and constitutional errors at the trial, without limit of time. . . . Possibility of unredressed injustice therefore remains only in prejudicial happenings during trial. The trial judge is given power by the Rules to entertain motions for new trial within five days after verdict and may extend that time for so long as he thinks necessary for proper consideration of the course of the trial. But extension of that time indefinitely is no insurance of justice. On the contrary, as time passes, the peculiar ability which the trial judge has to pass on the fairness of the trial is dissipated as the incidents and nuances of the trial leave his mind to give way to immediate business.

331 U.S. at 475–76, 67 S.Ct. at 1333–1334 (footnotes and citations omitted).[3]

### D.

■ Accordingly, we determine that the 120-day period of Rule 35 begins to run from the date of receipt of the mandate affirming the judgment of conviction or dismissing the appeal or after appropriate Supreme Court action, not from the date proceedings on a new trial motion are terminated.

### III.

■ Appellant's reference to the government's stipulation to the Rule 35 jurisdiction in the re-sentencing of his co-defendants is in the nature of an estoppel argument. He contends that because the government agreed on January 17, 1978, that there was Rule 35 jurisdiction in the proceedings for his co-defendants, it cannot, with reason, fairness, justice, and consistency, contend that Diaco's sentencing judge lacked jurisdiction on January 25, 1978. We concede abundant equitable appeal in this argument, but the inexorable reality is that the government had no power to confer Rule 35 jurisdiction on the court that resentenced his co-defendants. As we have previously observed, the 120-day limitation stated in Rule 35 is jurisdictional "and cannot under any circumstances be extended by order of the court." *United States v. Robinson, supra.* If the court cannot create jurisdiction, *a fortiori,* or in Justice Thurgood Marshall's felicitous phrase, *a multo fortiori,*[4] the United States Attorney cannot. That the court which resentenced his co-defendants may have lacked jurisdiction to do so is not an issue properly before this court, although, concededly, it appears to be an historical fact.

### IV.

■ It is settled that a defendant has no constitutional complaint because he or she has received a more severe sentence than that of a co-defendant. *See Dorszynski v. United States,* 418 U.S. 424, 440–41 & n. 14, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974); *United States v. Cardi,* 519 F.2d 309, 315–16 (7th Cir. 1975); *United States v. Menichino,* 497 F.2d 935, 945 (5th Cir. 1974); *Page v. United States,* 462 F.2d 932, 934–35 (3d Cir.

---

**3.** In *Addonizio v. United States,* 573 F.2d 147, 151 (3d Cir. 1978), this court similarly distinguished the relief available under Rule 35 and that available under 28 U.S.C. § 2255:

Rule 35's provision that a court "may reduce a sentence within 120 days" vests virtually unlimited power in the court to reduce the sentence without the necessity of any finding that the original sentence is subject to collateral attack or is otherwise contrary to law. By contrast, § 2255 vests in the sentencing court discrete jurisdiction to entertain a motion "to vacate, set aside, or correct" a sentence "at any time", and provides that where the court concludes it "was without jurisdiction to impose such sentence,

or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack", the court has the power to "discharge the prisoner or re-sentence him . . . or correct the sentence as may appear appropriate".

It should be readily apparent that although the district court has broad discretion under Rule 35 to reduce an otherwise legal sentence within the appropriate 120 days, relief under § 2255 is independently available if any of the specified reasons exists. *See Kills Crow v. United States,* 555 F.2d 183, 188 (8th Cir. 1977).

**4.** *Sanabria v. United States,* —— U.S. ——, ——, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978).

1972); *United States v. Sheets*, 443 F.2d 353, 354 n. 1 (8th Cir. 1971); *United States v. Baysden*, 326 F.2d 629, 631 (4th Cir. 1964); *Marcella v. United States*, 285 F.2d 322, 324 (9th Cir. 1960); *Shepard v. United States*, 257 F.2d 293, 294 (6th Cir. 1958); *United States v. Rosenberg*, 195 F.2d 583, 604 (2d Cir. 1952). "[A] federal trial judge is vested with wide discretion in imposing a sentence within the statutory limits prescribed for a given offense. Under ordinary circumstances, the exercise of that discretion is not subject to attack by review or collateral proceedings. . . . [But] the sentencing process may be re-examined . . . . When this occurs, it is not the *product* of the sentencing court's discretion that is reviewed, *i. e.*, the sentence, but the procedures inherent in the exercise of that discretion." *Del Piano v. United States*, 575 F.2d 1066 (3d Cir. 1978). Because Diaco requests us to review the product of the sentencing judge's discretion, *i. e.*, the length of sentence, we will not disturb the sentencing court's exercise of its broad discretion.

### V.

■ There is no merit to Diaco's contention that the trial judge, having voluntarily withdrawn from his co-defendants' cases, was required to withdraw in his case. In *United States v. Dansker, supra*, we faced the question whether this district judge erred in not withdrawing from the case. As previously observed, we held that "the trial judge's action in refusing to recuse himself . . . was not an abuse of discretion." 565 F.2d at 1266–67. We have neither the inclination nor the power to disturb that decision.

The judgment of the district court will be affirmed.