686 F.2d 147
 UNITED STATES of America, Appellant in Nos. 82-5103; 82-5198
v.
Francis D. FERRI a/k/a Rick Joseph Laverich, Kenneth R.
Matthews, Kenneth R. Matthews, Appellee.
UNITED STATES of America, Petitioner in No. 82-3227,
v.
Honorable Rabe F. MARSH, United States District Judge for
the Western District of Pennsylvania, Nominal Respondent,
Kenneth R. Matthews, Respondent.
 Nos. 82-5103, 82-5198 and 82-3227.
 United States Court of Appeals,
Third Circuit.
 Argued July 7, 1982.
Decided Aug. 3, 1982.
Rehearing and Rehearing En Banc Denied Aug. 24, 1982.
 
 J. Alan Johnson, U. S. Atty., Sandra D. Jordan (argued), Asst. U. S. Atty., Pittsburgh, Pa., for appellant.
 George F. Schumacher, Federal Public Defender, Thomas S. White (argued), Asst. Federal Public Defender, Pittsburgh, Pa., for appellee/respondent, Kenneth R. Matthews.
 Before SEITZ, Chief Judge, and VAN DUSEN and SLOVITER, Circuit Judges.
 OPINION OF THE COURT
 SLOVITER, Circuit Judge.
 
 I.
 BACKGROUND
 
 1
 Based on his alleged participation in a conspiracy to bomb the automobile of his business associate, Lynn P. Dunn, as part of a scheme to collect the proceeds of an insurance policy on Dunn's life, appellee Kenneth Matthews was convicted for maliciously damaging a vehicle used in interstate commerce by means of an explosive; for illegally making a destructive device; for the unregistered possession of a destructive device; and for mail fraud. 18 U.S.C. §§ 2, 371, 844(i); 26 U.S.C. §§ 5861(f), 5871; 26 U.S.C. §§ 5861(d), 5871; 18 U.S.C. § 1341. On April 23, 1975 a sentence of 15 years incarceration was imposed. The convictions were affirmed by this court and on December 1, 1977 Matthews began serving his sentence.
 
 
 2
 Since June, 1976 Matthews has challenged his sentence in numerous motions which have been the subject of previous decisions by both this court and the district court, as well as one decision by the Supreme Court. In the consolidated actions presently before us the government challenges two orders of the district court relating to two of these motions. In No. 82-5198, the government directly appeals an order reducing Matthews' sentence to time served; in No. 82-3227 the government seeks to vacate that same order via a petition for a writ of mandamus; No. 82-5103 is an appeal from an order of the district court directing the United States Parole Commission to provide Matthews with a new parole hearing utilizing the parole eligibility criteria which would have been applicable at the time of the commission of the crimes for which he was convicted. We will focus only on the facts essential to the government's challenge to these orders.
 
 II.
 THE ORDER REDUCING MATTHEWS' SENTENCE
 A.
 Appellate Jurisdiction
 
 3
 On August 4, 1978 Matthews filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255, alleging, inter alia, that he was denied the effective assistance of counsel because his attorney failed to file a timely motion for a reduction of sentence pursuant to Rule 35 of the Federal Rules of Criminal Procedure.[1] By an order dated March 12, 1979, the district court denied Matthews' motion. However, on June 9, 1980, this court vacated that order and remanded the case to the district court for an evidentiary hearing on Matthews' ineffective assistance of counsel allegation. United States v. Ferri, 624 F.2d 1091 (3rd Cir. 1981). The district court thereafter conducted a hearing and found that Matthews had been denied effective assistance of counsel. Accordingly, the court, following the procedure suggested in United States v. Ackerman, 619 F.2d 285, 288 (3d Cir. 1980), vacated Matthews' sentence and, on December 2, 1980, reimposed exactly the same sentence as had been originally imposed in 1975. The purpose of the resentencing was to afford Matthews 120 days within which to file a motion to reduce his sentence pursuant to Rule 35. In March, 1981 Matthews' counsel filed two timely Rule 35 motions, one to correct and the other to reduce his sentence. On April 1, 1981, the district court granted both motions and ordered that Matthews' sentence be corrected from 15 years to 10 years[2] and reduced from 10 years to 9 years. The April 1, 1981 order also denied various pro se motions to correct the sentence. Although the sentence as originally imposed in 1975 provided for immediate parole eligibility under 18 U.S.C. § 4208(a)(2) (1970) (recodified in 1976 at 18 U.S.C. § 4205(b)(2)), the April 1, 1981 order directed that Matthews would be eligible for parole upon serving one-third of his sentence pursuant to 18 U.S.C. § 4205(a) (1976).
 
 
 4
 On appeal Matthews claimed, inter alia, that the district court erred in changing his parole eligibility designation. In affirming the April 1, 1981 order on November 13, 1981, we noted that the government had previously "conceded before the district court that Matthews' sentence should be modified to provide for parole pursuant to 18 U.S.C. § 4205(b)(2) (1976)." United States v. Ferri, 673 F.2d 1302 (3rd Cir. 1981) (reprinted in app. at 161a).
 
 
 5
 On December 1, 1981, the district court entered an order changing Matthews' parole eligibility status. The order stated that "the sentence imposed on December 2, 1980 and corrected by order of court on April 1, 1981 shall remain in full force and effect except that the defendant shall become eligible for parole pursuant to 18 U.S.C. § 4205(b)(2) and not pursuant to 18 U.S.C. § 4205(a)." App. at 165a. Thereafter on March 2, 1982, Matthews filed a second motion for reduction of sentence pursuant to Rule 35. On March 23, 1982, before a response was filed by the government, the district court granted the motion, ordering that Matthews' sentence be reduced to time served and that he be immediately released from custody. The government immediately sought a stay of the district court order, pending appeal to this court. This motion was not ruled upon by the district court and Matthews was released from custody on March 26, 1982.
 
 
 6
 The government contends that Matthews' March 2, 1982 motion for reduction of sentence was filed outside the time limits established by Rule 35 and that, therefore, the district court was without jurisdiction to grant the motion. Before addressing the merits of this contention, we must first determine whether we have jurisdiction to review the government's challenge to the order reducing Matthews' sentence. The government asserts that the order is "final" and presents the "necessary characteristics of independence and completeness" to be appealable under the general authority of 28 U.S.C. § 1291 and that, alternatively, review is appropriate by way of mandamus.
 
 
 7
 The government has conceded that 18 U.S.C. § 3731, the statute ordinarily invoked to authorize government appeals in criminal cases, does not authorize an appeal from an order such as the one in question.[3] We agree. Neither a sentencing order nor an order reducing a sentence are specifically mentioned in section 3731. As the Fifth Circuit recently stated in United States v. Denson, 588 F.2d 1112, 1125 (5th Cir.), vacated on other grounds, 603 F.2d 1143 (5th Cir. 1979) (en banc):
 
 
 8
 Section 3731 cannot be construed to authorize a Government appeal from any and every District Court order. To so construe Section 3731 would do violence to Congress' express intention to carefully identify and define the situations in which the Government might appeal.
 
 
 9
 Accord, United States v. DeMier, 671 F.2d 1200, 1204 n.12 (8th Cir. 1982). Contra, United States v. Hetrick, 644 F.2d 752, 754-55 (9th Cir. 1981).
 
 
 10
 We turn then to the government's contention that this appeal is authorized under 28 U.S.C. § 1291, which confers on the courts of appeals "jurisdiction of appeals from all final decisions of the district courts of the United States." It is well established that as a general rule "the Federal Government enjoys no inherent right to appeal a criminal judgment, and that the grant of general appellate jurisdiction, now contained in 28 U.S.C. § 1291, does not authorize such a federal appeal." Arizona v. Manypenny, 451 U.S. 232, 246, 101 S.Ct. 1657, 1666, 68 L.Ed.2d 58 (1981). See DiBella v. United States, 369 U.S. 121, 130, 82 S.Ct. 654, 659, 7 L.Ed.2d 614 (1962); United States v. Jannotti, 673 F.2d 578, 580 n.1 (3d Cir. 1982) (en banc), cert. denied, --- U.S. ----, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982). In Carroll v. United States, 354 U.S. 394, 403-04, 77 S.Ct. 1332, 1338, 1 L.Ed.2d 1442 (1957) (citations and footnotes omitted), however, the Supreme Court stated:
 
 
 11
 (C)ertain orders relating to a criminal case may be found to possess sufficient independence from the main course of the prosecution to warrant treatment as plenary orders, and thus be appealable on the authority of 28 U.S.C. § 1291 without regard to the limitations of 18 U.S.C. § 3731, just as in civil litigation orders of equivalent distinctiveness are appealable on the same authority without regard to the limitations of 28 U.S.C. § 1292. The instances in criminal cases are very few.... In such cases, as appropriate, the Government as well as the moving person has been permitted to appeal from an adverse decision.
 
 
 12
 See United States v. Fields, 425 F.2d 883, 886 (3d Cir. 1970) (government may appeal under section 1291 order directing return of seized property to third party because "the motion for return of the motor vehicle was an independent proceeding intended for the benefit of a person not a party to the criminal case and not a step in the criminal case"). Under the authority of Carroll several courts have held that section 1291 authorizes an appeal by the government from certain orders relating to sentencing. See United States v. Busic, 592 F.2d 13, 25-26 (2d Cir. 1978) (government can cross-appeal under section 1291 from part of sentence order designating an early date for parole eligibility); United States v. United States District Court, 601 F.2d 379 (9th Cir. 1978) (section 1291 authorizes government appeal of district court's failure to impose a special mandatory parole term). In Busic the Second Circuit reasoned that:
 
 
 13
 The (sentence) order is clearly a "final decision" both within the meaning of (28 U.S.C. § 1291) ... and within the meaning generally given in the context of criminal proceedings .... Just as surely, it is "truly collateral to the criminal prosecution itself in the sense that (it) will not 'affect, or ... be affected by, decision of the merits of this case.' "
 
 
 14
 592 F.2d at 26 (citations and footnotes omitted). Based on this same rationale both the Sixth Circuit and the Eighth Circuit have specifically held that the government may appeal, pursuant to section 1291, a district court order reducing a sentence. United States v. DeMier, 671 F.2d 1200, 1203-04 (8th Cir. 1982); United States v. United States District Court, 645 F.2d 7 (6th Cir. 1981). The government relies primarily upon these two decisions as support for its contention that a direct appeal is authorized in this case. Other courts, however, have rejected the contention that orders relating to sentencing fall within the Carroll doctrine. See United States v. Denson, 588 F.2d at 1126-27; United States v. Lane, 284 F.2d 935, 938 (9th Cir. 1960). In Denson, the Fifth Circuit reasoned that:
 
 
 15
 The sentencing process is the inevitable culmination of a successful prosecution; it is an integral aspect of a conviction. Therefore, we hold that the orders of sentence and probation are not possessed of "sufficient independence" from the criminal case to permit a Government appeal under 28 U.S.C.A. § 1291.
 
 
 16
 588 F.2d at 1126.
 
 
 17
 Given the Supreme Court's emphasis upon the rarity of orders falling within the Carroll doctrine and the strict requirement that such orders possess sufficient independence from the criminal case, it is indeed debatable whether the order challenged here can properly be classified as falling within the Carroll doctrine. However, since we believe that review by way of mandamus, pursuant to 28 U.S.C. § 1651,[4] is appropriate in this case, we need not decide whether the order in question is appealable under 28 U.S.C. § 1291.[5] See United States v. United States District Court, 509 F.2d 1352, 1354 (9th Cir.), cert. denied, 421 U.S. 962, 95 S.Ct. 1949, 44 L.Ed.2d 448 (1975). See also Frederick L. v. Thomas, 578 F.2d 513, 516 (3d Cir. 1978); United States v. Jackson, 550 F.2d 830, 831 (2d Cir. 1977).
 
 B.
 Propriety of Mandamus
 
 18
 Mandamus is an extraordinary remedy which is "to be granted only in extraordinary cases." United States v. Olds, 426 F.2d 562, 565 (3d Cir. 1970). "(Mandamus) can, of course, not be availed of to correct a mere error in the exercise of conceded judicial power." DeBeers Consolidated Mines, Ltd. v. United States, 325 U.S. 212, 217, 65 S.Ct. 1130, 1132, 89 L.Ed. 1566 (1945). In this case, however, the government contends that the district court was without jurisdiction to reduce Matthews' sentence. Such an issue of judicial power falls squarely within the narrow range of cases for which mandamus is appropriate. See Roche v. Evaporated Milk Association, 319 U.S. 21, 63 S.Ct. 938, 87 L.Ed. 1185 (1943). See also United States v. Norton, 539 F.2d 1082, 1083 (5th Cir. 1976), cert. denied, 429 U.S. 1103, 97 S.Ct. 1129, 51 L.Ed.2d 553 (1977); United States v. United States District Court, 509 F.2d at 1354. We therefore conclude that we have jurisdiction to review the order in question pursuant to 28 U.S.C. § 1651.
 
 
 19
 In order to ensure that the writ of mandamus will issue only in extraordinary circumstances, the Supreme Court has set forth various conditions for its issuance. "Among these are that the party seeking issuance of the writ have no other adequate means to attain the relief he desires ..., and that he satisfy 'the burden of showing that (his) right to issuance of the writ is clear and indisputable.' " Kerr v. United States District Court, 426 U.S. 394, 403, 96 S.Ct. 2119, 2124, 48 L.Ed.2d 725 (1976) (citations omitted). Moreover, even if the petitioner is able to meet these heavy burdens, the issuance of the writ is still nonetheless "in large part a matter of discretion with the court to which the petition is addressed." Id. See Citibank, N.A. v. Fullam, 580 F.2d 82, 90 (3d Cir. 1978).
 
 
 20
 In the instant case Matthews contends, inter alia, that we should exercise our discretion and decline to grant relief by way of mandamus because of the lapse of time and intervening events between the date his sentence was reduced and the date the mandamus proceeding was instituted. He relies primarily upon United States v. Olds, 426 F.2d 562, 565 (3d Cir. 1970), in which this court, exercising its discretion and without reaching the merits, declined to grant relief by way of mandamus because of the government's "unexcused tardiness in pursuing its challenge." In Olds, as in this case, the government challenged a reduction of defendant's sentence pursuant to Rule 35 on the ground the district court had exceeded its power in entering the order. In denying the government's petition we noted that the government had inexplicably waited nearly three months before seeking relief and that "during this delay Olds resumed his university studies and otherwise adjusted his life in reliance on the district court's order." Id. at 566. We concluded that under the circumstances there had been an unreasonable delay in filing the petition and that had the government acted promptly, the order in question could have been tested without personal hardship to Olds. Id. Matthews contends that in this case, as in Olds, the government delayed filing the mandamus petition and that in reliance upon the district court's order he has reestablished his relationship with his family and otherwise adjusted his life.
 
 
 21
 We believe that the instant case is distinguishable from Olds. Here, unlike in Olds, the government filed a timely appeal to this court on March 30, 1982, one week after the order in question was entered by the district court. Moreover, on March 25, 1982, one day prior to Matthews' release from prison on March 26, 1982, the government filed a motion with the district court for a stay of its order. Thus, from the outset, Matthews' was put on notice that the government was challenging the reduction of his sentence. After filing its appeal, the government, being justifiably uncertain as to the proper procedural vehicle for review of an order reducing a criminal sentence, filed its petition for a writ of mandamus on June 11, 1982. As the Ninth Circuit noted in United States v. Lane, 284 F.2d 935, 939 (9th Cir. 1960), a case involving similar facts,
 
 
 22
 It is true that the government could have filed the latter motion (to file a petition for a writ of mandamus) at an earlier date. But in view of the pendency of the appeal we would undoubtedly have withheld action on the motion until the appeal was also ready for consideration.
 
 
 23
 Thus, in view of the fact that in this case the government expeditiously appealed the order in question, we reject Matthews' contention that the government is guilty of laches with respect to its filing of the mandamus petition.
 
 
 24
 We likewise reject Matthews' contention that we should decline to exercise our discretion in this case because the government did not object at the outset to the district court's jurisdiction and "did not preserve this issue by appropriate procedures." Matthews contends that at a hearing before the district court on December 1, 1981, his counsel stated that he would be filing a Rule 35 motion for reduction of sentence and the government did not object. He further points out that the government filed no response in the district court to his March 2, 1982 motion for reduction of sentence. There is, however, no indication that the government consented to the filing of the Rule 35 motion at the December hearing.[6] While it is true that the government could have acted more promptly in filing a response to Matthews' March 2, 1982 motion,[7] the government did immediately seek a stay of the district court's order and promptly appealed to this court upon Matthews' release. Under these circumstances, we reject Matthews' contention that the government did not properly preserve this issue for mandamus relief. Accordingly, we proceed to consider the merits of the government's contention that the district court did not have jurisdiction to enter the order reducing Matthews' sentence to time served.
 
 C.
 The Timeliness of the Rule 35 Motion
 
 25
 Rule 35 provides in relevant part that the district court "may reduce a sentence within 120 days after the sentence is imposed, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal." Rule 45(b) expressly provides that "the court may not extend the time for taking any action under Rules 29, 33, 34 and 35, except to the extent and under the conditions stated in them." Thus, "(t)he 120-day time limitation stated in Rule 35 'is jurisdictional and cannot, under any circumstances, be extended by order of the court.' " United States v. Robinson, 457 F.2d 1319 (3d Cir. 1972) (per curiam) (citations omitted).
 
 
 26
 The government argues that in this case the district court was without jurisdiction to reduce Matthews' sentence because the sentence was imposed on December 2, 1980 and, therefore, Matthews' motion to reduce his sentence, filed on March 2, 1982, was outside the 120-day time limit. Matthews, on the other hand, argues that the government has not met its burden of showing that the district court was "clearly without jurisdiction," see Hazeltine Corp. v. Kirkpatrick, 165 F.2d 683, 685 (3d Cir.), cert. denied, 334 U.S. 819, 68 S.Ct. 1084, 92 L.Ed. 1749 (1948), because the district court had "ostensible jurisdiction" by virtue of the following two triggering events which both occurred within 120 days of Matthews' motion: (1) the district court's correction on December 1, 1981 of the April 1, 1981 order reducing his sentence and (2) this court's affirmance on November 13, 1981 of the April 1 order. We find that neither event gives the defendant an additional 120 days in which to file a second Rule 35 motion.
 
 
 27
 A somewhat analogous situation arose in United States v. Llinas, 670 F.2d 993 (11th Cir. 1982), where after the defendant filed a timely Rule 35 motion for reduction of sentence which was granted by the district court, the defendant sought a second reduction by filing another Rule 35 motion. This motion was filed more than 120 days after the imposition of sentence or other triggering events set forth in Rule 35, but less than 120 days after the district reduced the sentence. The Eleventh Circuit found that the second Rule 35 motion was untimely, holding that: "the 120-day period for reduction of sentence under Rule 35 runs from the date of the original sentence or the events specified in Rule 35, and does not start over again when the original sentence is reduced pursuant to a prior motion." Id. at 993. Accord, United States v. Rannazzisi, 443 F.Supp. 916 (S.D.N.Y.1978); United States v. Hughes, 36 F.R.D. 25 (S.D.N.Y.1964). Neither party has cited to any decision that has reached a contrary result.
 
 
 28
 We believe that the holding in Llinas is clearly supported by the terms, logic and policy of Rule 35. As we have previously stated, " 'Rule 35 is intended to give every convicted defendant a second round before the sentencing judge, and at the same time, it affords the judge an opportunity to reconsider the sentence in the light of any further information about the defendant or the case which may have been presented to him in the interim.' " United States v. Johnson, 634 F.2d 94, 96 (3d Cir. 1980) (quoting United States v. Ellenbogen, 390 F.2d 537, 543 (2d Cir.), cert. denied, 393 U.S. 918, 89 S.Ct. 241, 21 L.Ed.2d 206 (1968)). Nonetheless, some limitation on the court's power to reduce a sentence is necessary " 'to protect the district court judge from continual importunities while the defendant is serving his sentence,' " United States v. Dansker, 581 F.2d 69, 73 (3d Cir. 1978) (quoting United States v. United States District Court, 509 F.2d 1352, 1356 n.6 (9th Cir.), cert. denied, 421 U.S. 962, 95 S.Ct. 1949, 44 L.Ed.2d 448 (1975)), and, as Professor Moore points out, because "after a lapse of time the peculiar ability of the court to determine sentence gives way to the presumably greater competence, and knowledge, of the penal authorities." United States v. Dansker, 581 F.2d at 73 (quoting 8A Moore's Federal Practice P 35.02, at 35-4 n.4 (2d ed. 1968)). Thus, the object of the 120-day time limitation "was to limit, and to limit severely, the district court's jurisdiction." United States v. Dansker, 581 F.2d at 73. To allow a defendant who has filed a Rule 35 motion to file subsequent Rule 35 motions by piggybacking on the grant of the previous motion frustrates the object of the 120-day time restraint. As the Llinas court pointed out, "all the reasons for reduction (of sentence) should be asserted in the (initial) motion." 670 F.2d at 994. Indeed, if a defendant could, as in this case, file a Rule 35 motion, get a reduction and correction, and then file a subsequent motion for reduction of sentence within 120 days thereafter, he or she would be getting considerably more than "a second round before the sentencing judge." If this process were repeated a defendant could conceivably get an unlimited number of rounds-thereby stretching the time restraint contained in Rule 35 considerably beyond the 120-day limitation.
 
 
 29
 In this case Matthews, unlike the defendant in Llinas, does not argue that his Rule 35 motion was timely because it was made within 120 days of the date his sentence was reduced.[8] Rather, he invokes two other dates as "triggering events"-this court's affirmance of the order reducing his sentence and the district court's correction of that order.
 
 
 30
 As to the first, if the April 1 order reducing the sentence is not equivalent to imposition of sentence for purposes of Rule 35, then our affirmance of that order on November 13, 1981 would likewise not trigger the 120-day period even though our affirmance contained a statement that the government had conceded correction was appropriate. This conclusion is supported by this court's holding in United States v. Dansker, 581 F.2d at 74, that "the 120-day period of Rule 35 begins to run from the date of receipt of the mandate affirming the judgment of conviction or dismissing the appeal" not from the date proceedings on other collateral appeals are terminated.
 
 
 31
 Nor do we agree with Matthews' suggestion that the mere fact that the district court entered an order on December 1, 1981 correcting the April 1, 1981 order should retrigger the 120-day period in which to file a Rule 35 motion. There is simply no reason why a correction of Matthews' parole eligibility designation-in his favor-should give him a second opportunity to obtain a reduction in sentence. Furthermore, as the government correctly points out, it is very difficult to view the December 1, 1981 order as an "imposition of sentence" within the meaning of Rule 35 since the order itself states "the sentence imposed on December 2, 1980 and corrected by order of court of April 1, 1981 shall remain in full force and effect except that the defendant shall become eligible for parole pursuant to 18 U.S.C. § 4205(b)(2) and not pursuant to 18 U.S.C. § 4205(a)." App. at 165a.
 
 
 32
 We, therefore, hold that the district court was without jurisdiction to grant Matthews' March 2, 1982 motion for reduction of sentence.
 
 III.
 THE ORDER REQUIRING A NEW PAROLE HEARING
 
 33
 Because we conclude that the district court did not have jurisdiction to reduce Matthews' sentence to time served and to order his release from custody, we must address the government's challenge, in No. 82-5103, to the district court's order of December 1, 1981 requiring the Parole Commission to provide Matthews with a new parole hearing.[9] The facts relevant to this appeal are set forth below.
 
 
 34
 On May 30, 1978 Matthews filed a petition for a writ of habeas corpus,[10] alleging, inter alia, that the intent of the sentencing judge had been frustrated by the application to him of parole guidelines which were different than those in effect at the time of his sentencing in 1975. By order dated October 17, 1978, the district court denied the petition.
 
 
 35
 Matthews then appealed to this court, contending in addition that application of the new parole guidelines to him was prohibited by the ex post facto clause of the Constitution. We affirmed the judgment of the district court. 620 F.2d 288, 290 (3d Cir. 1980) (mem.). Thereafter Matthews filed a petition for a writ of certiorari to the Supreme Court in which he argued, inter alia, that the Parole Commission had improperly and incorrectly applied its guidelines to him. His principal claim, however, appears to have been that the application to him of the new guidelines constituted an ex post facto violation. See United States v. Ferri, 652 F.2d 325, 326 (3d Cir. 1981). The Supreme Court vacated this court's judgment of affirmance and remanded for further consideration in light of Weaver v. Graham, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). Matthews v. United States, 450 U.S. 962, 101 S.Ct. 1476, 67 L.Ed.2d 611 (1981).
 
 
 36
 On June 18, 1981, this court remanded the case to the district court for full consideration of Matthews' ex post facto claim. United States v. Ferri, 652 F.2d at 329. In a petition for rehearing, which was denied by this court, the government contended that the district court did not have jurisdiction to consider Matthews' ex post facto claim under 28 U.S.C. § 2255. This same argument was repeated to the district court by the government in a petition to dismiss for lack of jurisdiction dated September 8, 1981. That petition was denied by the district court without opinion on October 15, 1981.
 
 
 37
 Pursuant to this court's remand, the district court conducted an evidentiary hearing on Matthews' ex post facto claim, and found that the Parole Commission's new guidelines, promulgated in 1976, had been retrospectively applied to Matthews and that the application of these guidelines had a detrimental impact upon Matthews' parole eligibility.[11] Accordingly, the court on December 21, 1981 ordered that the Parole Commission provide Matthews with a new parole hearing "utilizing criteria which would have been applied in 1971 at the time of the commission of the crimes for which petitioner was convicted." App. at 18a.
 
 
 38
 Although we stayed the district court's order pending appeal on February 26, 1982, App. at 23a, apparently the Parole Commission had conducted a new hearing on February 25, 1982 and reevaluated Matthews' parole eligibility under the criteria in effect in 1971. The record contains no formal report of the results of the hearing.[12]
 
 
 39
 The government raises two contentions in challenging the district court's December 21 order: (1) that the district court did not have jurisdiction to consider Matthews' ex post facto claim; and (2) that the district court erred in finding that the application of the new parole guidelines to Matthews violated the ex post facto clause.[13]
 
 
 40
 As an initial matter, we must consider Matthews' contention that the resolution of the jurisdictional issue is controlled by the law of the case doctrine. Matthews suggests that we must view the Supreme Court's remand to this court and our subsequent remand to the district court for full consideration of Matthews' ex post facto claim as an implicit determination that the district court had jurisdiction to hear the claim. There is, however, no indication that the Supreme Court specifically considered the jurisdictional issue presently before us. As we recently held in United States v. Curtis, 683 F.2d 769, 772 (3d Cir. 1982), "We decline to infer rejection of an allegation of a constitutional violation in the absence of some judicial statement that the contention has been considered and rejected." Although Matthews is correct, as the government concedes, that the jurisdictional argument was presented to this court in the government's petition for rehearing of our June 18, 1981 decision, our summary denial of that petition cannot be viewed as a determination, sufficient to trigger law of the case consequences, that the district court had jurisdiction to consider Matthews' claim. As the Fifth Circuit stated in Carpa, Inc. v. Ward Foods, Inc., 567 F.2d 1316, 1320 (5th Cir. 1978), "The reach of the law of the case doctrine is not limitless. The doctrine is not an inexorable command that rigidly binds a court to its former decisions but rather is an expression of good sense and wise judicial practice." We, therefore, hold that we are not precluded from considering the government's jurisdictional contention by the law of the case doctrine and, therefore, proceed to consider that claim.[14]
 
 
 41
 The government maintains that the district court did not have jurisdiction to consider Matthews' ex post facto claim pursuant to 28 U.S.C. § 2255[15] because that provision does not empower the sentencing judge to review the manner in which the sentence is being executed by the Parole Commission. The government relies primarily upon the Supreme Court's holding in United States v. Addonizio, 442 U.S. 178, 190, 99 S.Ct. 2235, 2243, 60 L.Ed.2d 805 (1979), that "subsequent actions taken by the Parole Commission-whether or not such actions accord with a trial judge's expectations at the time of sentencing-do not retroactively affect the validity of the final judgment itself," and "do not provide a basis for a collateral attack on ... sentences pursuant to § 2255."
 
 
 42
 Although Matthews' challenge to the original parole determination sweeps more broadly than a claim that the intent of the sentencing judge was frustrated, we agree with the government that the rationale of the Court in Addonizio encompasses the type of challenge presented in this case. In holding that the claim that a sentencing judge's intent was frustrated by a post-sentencing change in Parole Commission policies is no longer available in a collateral attack, the Supreme Court reasoned that previous decisions which permitted collateral attack pursuant to section 2255 involved claims which, inter alia, went to the "lawfulness of the judgment itself" and that an attack on action taken by the Parole Commission did not fall within this category:
 
 
 43
 The change in Parole Commission policies involved in this case is not of the same character: this change affected the way in which the court's judgment and sentence would be performed but it did not affect the lawfulness of the judgment itself-then or now.... Whether or not the Parole Commission action in this case was constitutional, a question not presented here, there is no claim that the action taken by the sentencing judge was unconstitutional, or was based on "misinformation of constitutional magnitude."
 
 
 44
 442 U.S. at 187, 99 S.Ct. at 2241 (emphasis added).
 
 
 45
 As in Addonizio the challenged action of the Parole Commission in this case affects the way in which the sentencing court's judgment and sentence is performed, but does not affect the lawfulness of the judgment itself. Further, Matthews' challenge is directed to the constitutionality of the Parole Commission's action in executing his sentence; "there is no claim that the action taken by the sentencing judge was unconstitutional or based on 'misinformation of constitutional magnitude.' "
 
 
 46
 We, therefore, conclude that the claim that the Parole Commission's application of its guidelines to Matthews constituted a violation of the ex post facto clause does not give the court which imposed the sentence jurisdiction pursuant to section 2255. Accord, Johnson v. United States, 650 F.2d 1, 4 n.5 (1st Cir. 1981) (dictum). The government has conceded, however, that Matthews' attack on the action of the Parole Commission may be brought in the district court of Connecticut, the district in which he was previously confined and in which he would presumably be reconfined, pursuant to 28 U.S.C. § 2241(a). See Zannino v. Arnold, 531 F.2d 687, 689 n.5 (3d Cir. 1976); Izsak v. Sigler, 604 F.2d 1205, 1206 n.1 (9th Cir. 1979); Andrino v. United States Board of Parole, 550 F.2d 519, 520 (9th Cir. 1977) (per curiam). A habeas petition pursuant to section 2241(a) must be sought from a district court with jurisdiction over the custodian of the prisoner. See Braden v. 30th Judicial Circuit Court, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973). It may be that the matter can be adjusted administratively without the necessity of Matthews filing another action in the District Court of Connecticut.[16]IV.
 
 CONCLUSION
 
 47
 As indicated in part II, supra, because we find that the district court was without jurisdiction to grant the motion for reduction of sentence, we will grant the government's petition in No. 82-3227 for a writ of mandamus vacating the district court's order of March 23, 1982 reducing Matthews' sentence to time served and releasing him from custody. We are confident that Judge Marsh " 'will fully effectuate these views without the necessity of our entering any formal order. Petitioners may, however, apply to this court for a formal order directing the issuance of the writ of mandamus if the need therefor should arise.' " Hayman Cash Register Co. v. Sarokin, 669 F.2d 162, 170 (3d Cir. 1982). The granting of the petition for mandamus renders the appeal in No. 82-5198 moot and accordingly the appeal in that action will be dismissed.
 
 
 48
 In No. 82-5103 we hold that the district court was without jurisdiction to consider Matthews' constitutional challenge to the application of the new parole guidelines to him. The matter will be remanded to the district court so that it may dismiss the action.
 
 
 
 [1]
 Rule 35 provides in pertinent part:
 The court may reduce a sentence within 120 days after the sentence is imposed, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction. The court may also reduce a sentence upon revocation of probation as provided by law. Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a permissible reduction of sentence under this subdivision.
 
 
 [2]
 Relying upon United States v. Schwanke, 598 F.2d 575, 578-79 (10th Cir. 1979), the district court held that the enhanced penalty provisions of 18 U.S.C. § 844(i) were improperly applied to Matthews since only a co-conspirator had been injured in the commission of the crime
 
 
 [3]
 18 U.S.C. § 3731 provides in relevant part:
 In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.
 An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.
 
 
 [4]
 28 U.S.C. § 1651(a) provides:
 The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.
 
 
 [5]
 It is often important to determine whether a direct appeal or a petition for a writ of mandamus is the appropriate process by which to review a district court order, since the scope of review differs for the two processes. See United States v. Cuthbertson, 651 F.2d 189, 193 (3d Cir. 1981). "On appeal, our scope of review is plenary: we review the court's choice, interpretation, and application of a legal precept.... (On mandamus) the petitioner has the burden of showing that its right to mandamus relief is 'clear and indisputable.' " Id. In the instant case, however, we believe that under either standard of review the government should prevail
 
 
 [6]
 To the contrary, at the hearing the government made clear that although it believed the parole eligibility designation in the April 1, 1981 order should be corrected, in its view the nine year sentence imposed on that date was otherwise "correct and need not be altered or reduced any further." App. at 27a
 
 
 [7]
 The government attributed its failure to file a response to Matthews' Rule 35 motion to its reliance upon a law clerk's statement that the government would be notified when its response was due. App. at 172a
 
 
 [8]
 Matthews is precluded from making this argument since his motion, filed on March 2, 1982, was not within 120 days of the April 1, 1981 order reducing and correcting his sentence
 
 
 [9]
 The government may appeal this order because a proceeding in habeas corpus is not a criminal proceeding. Accordingly, "the Criminal Appeals Act (18 U.S.C. § 3731) has no applicability to such a proceeding," and the government as well as the prisoner has a right to appeal a final order entered in the context of a section 2255 proceeding. Andrews v. United States, 373 U.S. 334, 338, 83 S.Ct. 1236, 1239, 10 L.Ed.2d 383 (1963). Section 2255 provides in part: "An appeal may be taken to the court of appeals from the order entered on the motion as from a final judgment on application for a writ of habeas corpus." 28 U.S.C. § 2255. See 28 U.S.C. § 2253. See generally United States v. Allen, 613 F.2d 1248, 1250 (3d Cir. 1980)
 
 
 [10]
 Although Matthews was incarcerated elsewhere, the habeas petition was filed in the Western District of Pennsylvania pursuant to 28 U.S.C. § 2241. On June 5, 1978, the district court ordered that the petition "be treated as a motion to vacate sentence pursuant to 28 U.S.C. § 2255."
 
 
 [11]
 The district court relied primarily upon the testimony of John Lynch, a retired parole and probation officer, who testified, inter alia, that in 1971 there was an "atmosphere of leniency" in granting parole and that after the adoption of the new guidelines in 1976 there was a substantial change in this policy. App. at 33a-35a
 
 
 [12]
 Matthews contends that this hearing resulted in a determination that he would be eligible for parole in November, 1982. Brief for appellee at 12
 
 
 [13]
 Since we conclude that the district court was without jurisdiction, we do not address this contention
 
 
 [14]
 We also reject, as without merit, Matthews' contention that this appeal is moot because the Parole Commission has allegedly complied with the district court order in question since it is the government's position that the original action of the Parole Commission was legal, and did not violate the ex post facto provision of the Constitution. Were we to have decided that the district court had jurisdiction, the government would have been entitled to be heard on the merits
 
 
 [15]
 28 U.S.C. § 2255 provides in relevant part:
 A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.
 ....
 ... If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.
 
 
 [16]
 At oral argument before us, the government indicated that the Parole Commission is willing to reevaluate Matthews' parole eligibility, prior to reincarcerating him. If the Parole Commission determines that Matthews is eligible for parole, Matthews' ex post facto claim would presumably be moot