812 F.2d 822
 GOVERNMENT OF the VIRGIN ISLANDS
v.
DOUGLAS, Leo, Appellant in No. 85-3488.
GOVERNMENT OF the VIRGIN ISLANDS, Appellant in No. 85-3732,
v.
DOUGLAS, Leo.
In re GOVERNMENT OF the VIRGIN ISLANDS, Petitioner in No. 86-3544.
 Nos. 85-3488, 85-3732 and 86-3544.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 2, 1986.
Decided Feb. 19, 1987.
 
 Robert L. Tucker, Federal Public Defender, Thurston T. McKelvin (argued), First Asst. Federal Public Defender, St. Thomas, V.I., for appellant in No. 85-3488.
 James W. Diehm, U.S. Atty., Azekah E. Jennings (argued), Asst. U.S. Atty., District of the Virgin Islands, Ann T. Wallace, U.S. Dept. of Justice, Washington, D.C., for appellant in No. 85-3732 and for petitioner in No. 86-3544.
 Before SLOVITER, STAPLETON and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 STAPLETON, Circuit Judge:
 
 
 1
 Leo Douglas was convicted of attempted aggravated rape under 14 V.I.C. Secs. 331, 1700(c) (Count I) and possession of a deadly weapon during the commission of a crime of violence in violation of 14 V.I.C. Sec. 2251(a)(2)(B) (Count II). Douglas was sentenced to 3.5 years imprisonment for Count I and 2.5 years imprisonment for Count II, with terms to run concurrently. He appeals the convictions on several grounds, arguing that the district court's errors included: 1) allowing him to be convicted of a different crime than that charged in the information, 2) misconstruing the statutory term "crimes of violence" to include sodomitic rape, and 3) failing to give a jury instruction concerning unlawful sexual contact on the basis of 14 V.I.C. Sec. 332. We reject all of Douglas' challenges to the convictions.
 
 
 2
 Douglas also contends that the judge erred in construing 14 V.I.C. Sec. 331 to require a minimum sentence for attempts to commit criminal acts. On this issue, we hold that the district court misconstrued the criminal code, and we remand for resentencing in light of our holding that 14 V.I.C. Sec. 331 does not impose any minimum sentence for attempt crimes.
 
 
 3
 The government appeals on the narrow issue of whether the judge erred in failing to impose the sentence for the possession of a deadly weapon charge consecutively with the attempted aggravated rape sentence. We find that this court has no jurisdiction to entertain the government's appeal of the sentencing order. In the alternative, the government petitions for a writ of mandamus. We decline to issue such a writ because we hold that the statute in question, 14 V.I.C. Sec. 2251, does not mandate imposition of consecutive sentences.
 
 I.
 
 4
 Douglas offered to give a 14 year old male minor (the victim) a ride from school to his home. The victim accepted and got into Douglas' van. At several times during the automotive trip, Douglas displayed a knife and threatened to injure the victim if he tried to escape. The victim testified that, while driving, Douglas touched the victim on his "private," presumably his penis. Eventually, Douglas took the victim to a deserted building, where Douglas unzipped his own pants and tried, according to the victim, "to put his private by my bun." Trial Transcript at 35. Douglas next put his weight on the victim, pinning him against the wall, removed his own pants and the victim's pants and rubbed the victim's flaccid penis against his rear end. The victim testified that he did not know whether his penis was ever inserted in Douglas' anus.
 
 The information stated:
 Count I
 
 5
 On or about the 29th day of April, 1985, in the Virgin Islands of the United States, Judicial Division of St. Thomas and St. John, LEO DOUGLAS, while threatening the use of a deadly weapon, to wit: a knife, did perpetrate an act of sodomy, with a person, to wit: a male minor 14 years old, when his resistance was prevented by fear of immediate and great bodily harm which he had reasonable cause to believe would be inflicted upon him, in violation of Title 14, Virgin Islands Code, Section 1700(c).
 
 Count II
 
 6
 On or about the 29th day of April, 1985, in the Virgin Islands of the United States, Judicial Division of St. Thomas and St. John, LEO DOUGLAS, with intent to use same unlawfully against another, to wit: a male minor 14 years of age, did possess a dangerous weapon, a knife, during the commission of a crime of violence, to wit: aggravated rape, in violation of Title 14, Virgin Islands Code, Section 2251(a)(2).
 
 
 7
 Appendix at 1-2. The criminal law of the Virgin Islands defines rape and aggravated rape to include both sexual intercourse and sodomy. 14 V.I.C. Secs. 1700-1703 (Supp.1985).
 
 
 8
 In the government's opening statement, it claimed that its evidence would support the entire, above-related narrative, including both Douglas' abortive attempt to penetrate the victim and his subsequent actions in trying to force a penetration of himself by the victim. The direct and cross-examination of the victim covered the entire course of events. At the close of the government's case, Douglas moved for acquittal, arguing, inter alia, that sodomy under the Virgin Islands rape law did not include forced penetration of the accused by the victim. The court agreed with Douglas' statutory interpretation, holding that sodomy includes only penetration by the accused. The district court decided, however, that there was sufficient evidence of an attempted aggravated sodomy, i.e., Douglas' attempted penetration of the victim, to allow the government to go forward with the prosecution. The jury returned verdicts of guilty on both the amended Count I and Count II.
 
 II.
 
 9
 The district court had subject matter jurisdiction over this case under the Revised Organic Act, 48 U.S.C. Sec. 1612, and 4 V.I.C. Sec. 76. This court has jurisdiction over Douglas' appeal of the conviction and sentencing order under 28 U.S.C. Sec. 1291.
 
 A.
 
 10
 Douglas argues that the district court erred in allowing a charge of attempted aggravated rape to be substituted for the charge of aggravated rape in Count I of the information. The government asserts that Douglas' conviction on a charge of attempted aggravated rape was permissible as a conviction on a lesser included offense, as authorized by Fed.R.Crim.P. 31(c), and, alternatively, that there was in effect an amendment of the information as allowed by Fed.R.Crim.P. 7(e). Our review of the application of the Federal Rules to the facts of this case is plenary. We do not reach the government's second argument because we agree with its first.
 
 
 11
 Rule 31(c) states: "The defendant may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein if the attempt is an offense." Conceptually, there is no doubt that attempted aggravated rape is an "attempt to commit the offense charged," specifically aggravated rape. Douglas argues, however, that the "offense charged" in the information in this case involved the victim's penetration of Douglas and that the attempted penetration of the victim by Douglas involved an independent set of facts. He urges as a matter of law that factually independent lesser offenses are not encompassed by Rule 31(c).[1]
 
 
 12
 We need not reach the merits of Douglas' legal assertion because we do not agree with his premise that the information charged him with forcing the victim to penetrate him. We conclude not only that the information is literally consistent with the theory that Douglas committed forcible sodomy by penetrating the victim, but also that it is far more reasonable to read a forcible sodomy information as the district court did than as Douglas purports to have done. Moreover, as Douglas successfully argued in the district court, the court's construction is confirmed by the statute that he was alleged in the information to have violated. Count I of the information charges that Douglas perpetrated an act of sodomy with a 14 year old male while threatening the use of a knife in violation of Sec. 1700(c). The statute defines "sodomy" as "oral sex, i.e., cunnilingus or fellatio, or anal intercourse, i.e., any insertion, however slight, of any part of a person's body or of any object into the anal opening of another person's body, excluding such insertion for medical treatment or examination." 14 V.I.C. Sec. 1699(e) (Supp.1985). As the district court properly concluded, this definition includes penetration by the accused but not penetration of the accused by the victim.
 
 
 13
 On this basis, we conclude that Count I of the information, when read in conjunction with the statute cited therein, charges Douglas with aggravated rape on the theory that he penetrated the victim. Consequently, the elements of the crime charged in the information and the lesser included offense substituted by the judge in his charge were not factually independent, but were instead identical except for the element of actual penetration by Douglas. Under these circumstances, Fed.R.Crim.P. 31(c) allowed the judge to substitute a charge on the lesser included offense of attempted aggravated rape for the original charge of aggravated rape.
 
 
 14
 One concern underlying Rule 31(c) is that the defendant receive adequate notice of the elements of the crime which the government seeks to prove as required by the Sixth Amendment and the Virgin Islands Bill of Rights, 48 U.S.C. Sec. 1561. Viewed in the light most favorable to Douglas, the information was ambiguous as to what proofs the government would offer, but it was unambiguous with respect to the elements of the crime charged. "Although an indictment must--in order to fulfill constitutional requirements--apprise the defendants of the essential elements of the offense with which they are charged, neither the Constitution, the Federal Rules of Criminal Procedure, nor any other authority suggests that an indictment must put the defendants on notice as to every means by which the prosecution hopes to prove that the crime was committed." United States v. Haldeman, 559 F.2d 31, 124 (D.C.Cir.1976), cert. denied, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977). While the government pursued two independent theories in attempting to prove the element of sodomy at trial,[2] there is nothing fundamentally unfair about such a strategy.B.
 
 
 15
 Douglas argues that his conviction on the weapons count was based on an erroneous statutory construction. Our review of statutory construction issues is plenary. The relevant provision, 14 V.I.C. Sec. 2251(a), states:
 
 
 16
 (a) Whoever--
 
 
 17
 * * *
 
 
 18
 (2) with intent to use the same unlawfully against another has, possesses, bears, transports, carries or has under his proximate control, a dagger, dirk, dangerous knife, razor, stilleto, or any other dangerous or deadly weapon shall--
 
 
 19
 * * *
 
 
 20
 (B) if he ... has, possesses, bears, transports, carries, or has under his proximate control, any such weapon during the commission or attempted commission of a crime of violence (as defined in section 2253(d)(1) hereof) shall be fined not more than $2,000 or imprisoned not more than five (5) years, or both, which penalty shall be in addition to the penalty for the commission of, or attempt to commit, the crime of violence.
 
 
 21
 14 V.I.C. Sec. 2251 (Supp.1985). Section 2253(d)(1) gives "crime of violence" the same definition as that contained in 23 V.I.C. Sec. 451(e). Section 451(e) of Title 23 defines crimes of violence to include rape.[3]
 
 
 22
 Prior to 1984, rape was defined as "an act of sexual intercourse with a female not his wife" under various circumstances of force and lack of consent, 14 V.I.C. Sec. 1701 (1964) (amended), and sodomy was generally proscribed by 14 V.I.C. Sec. 2061 (1964) (repealed). The definition of sodomy did not include elements of force or absence of consent. In 1984, the general proscriptions of sodomy were repealed and forcible sodomy was included in the definition of rape. 1984 V.I.Sess.Laws 5013, Sec. 12.
 
 
 23
 Douglas argues that the term "rape" in Sec. 451(e) should be given the meaning it had prior to 1984 because the legislature enacted Secs. 451(e), 2251(a)(2)(B) and 2253 before 1984. As a matter of statutory construction, we find that when the legislature changes the definition of a criminal act, it is presumed that the new definition applies throughout the criminal code unless there is an expression of legislative intent to do otherwise. Douglas points to nothing in the statute or the legislative history suggesting that the legislature intended in 1984 to retain the old definition of "rape" within the definition of "crime of violence."
 
 
 24
 Douglas relies on Government of the Virgin Islands v. Carmona, 422 F.2d 95, 98-99 (3d Cir.1970) to support the proposition that terms in criminal statutes should be presumed to have their common law meaning. Carmona held that the crime of robbery included an element of specific intent based on common law principles despite the absence of that element in the statutory language. Carmona is inapplicable in this case because the legislature has explicitly and clearly redefined the crime of rape, altering the common law concept so as to include forcible sodomy. Government of the Virgin Islands v. Soto, 718 F.2d 72, 78 (3d Cir.1983), relied on by Douglas, is similarly inapt.
 
 
 25
 Finally, we note that inclusion of forcible sodomy within the classification of "crimes of violence" is perfectly consistent with a lay understanding of those terms. We hold that all acts of aggravated rape as defined in Sec. 1700, including acts of both forcible sexual intercourse and forcible sodomy, are subsumed in the term "rape" as used in the definition of "crime of violence." We therefore conclude that the district court did not err in construing Sec. 2251(a)(2)(B) to apply where a knife was used in an attempt to commit a forcible sodomy.C.
 
 
 26
 Douglas argues that he was entitled to a jury instruction on the lesser included offense of unlawful sexual contact on the strength of 14 V.I.C. Sec. 332, which states:
 
 
 27
 Whoever attempts unsuccessfully to commit an offense and accomplishes the commission of another and different offense, whether greater or lesser in guilt, shall be punished as prescribed by law for the offense committed, notwithstanding the provisions of section 331 of this title [relating to sentences for attempt crimes].
 
 
 28
 Douglas argues that the facts proved were sufficient to convict him of unlawful sexual contact under 14 V.I.C. Sec. 1708, and thus that, under Sec. 332, he had a right to a jury instruction on that lesser completed offense.
 
 
 29
 In our research, we have discovered no judicial interpretation of this provision. It is clear from the terms of the statute, however, that Sec. 332 relates only to sentencing. Douglas notes that Rule 31(c) has been construed to require jury instructions despite the absence of any explicit direction to do so and argues by analogy that Sec. 332 contains a similar implicit requirement to give instructions. We reject this analysis because Rule 31(c) relates to the trial stage, while Sec. 332 by its terms relates only to sentencing. Thus, we conclude that Sec. 332 does not establish any requirements with respect to jury instructions.
 
 
 30
 On the basis of the foregoing discussion, we affirm Douglas' convictions on Counts I and II.[4]
 
 D.
 
 31
 Douglas appeals the sentencing order on the ground that the district court misinterpreted the sentencing provision for attempt crimes. 14 V.I.C. Sec. 331 states in part:
 
 
 32
 Whoever unsuccessfully attempts to commit an offense, shall, unless otherwise specially prescribed by this Code or other law, be punished by--
 
 
 33
 (1) imprisonment for not more than 25 years, if the offense attempted is punishable by imprisonment for life; or
 
 
 34
 (2) in any other case, imprisonment for not more than one-half of the maximum term....
 
 
 35
 14 V.I.C. Sec. 331 (1964). Aggravated rape carries a minimum sentence of 7 years and a maximum of life imprisonment. 14 V.I.C. Sec. 1700 (Supp.1985). The judge read Sec. 331 to impose a minimum sentence on those convicted of attempt equal to one-half the minimum imposed for completion of the crime, and thus imposed a 3.5 year sentence for the conviction on Count I. Appendix at 7-8, 11, 15. Douglas argues that Sec. 331 should be construed to authorize sentences for attempted aggravated rape ranging from 0 to 25 years. The government argues that the imposition of a minimum sentence is appropriate.
 
 
 36
 Section 1700(c) makes no reference to the crime of attempted aggravated rape or the punishment for that crime. We read the plain words of Sec. 331 to provide for a maximum sentence of 25 years but no minimum. The government points to no legislative history or case law supporting the imposition of a minimum sentence.[5] Moreover, even if the statute is assumed to be ambiguous, the "rule of lenity," which requires courts to construe ambiguities in criminal statutes in favor of the accused, see United States v. Capano, 786 F.2d 122, 128 (3d Cir.1986), works in Douglas' favor. The court erred in construing Sec. 331 to impose a mandatory minimum sentence. We remand for resentencing in light of this opinion.
 
 III.
 
 37
 The government appeals the sentencing order for the purpose of contesting the district court's failure to impose the sentence for Count II consecutively with the sentence for Count I. We conclude that we have no jurisdiction to entertain the government's appeal.
 
 
 38
 "It is well settled that express statutory authorization is required for an appeal by the government in a criminal case." Government of the Virgin Islands v. Christensen, 673 F.2d 713, 715 (3d Cir.1982). In most cases, prosecutorial appeals of orders in criminal cases are based on 18 U.S.C. Sec. 3731.[6] However, in United States v. Ferri, 686 F.2d 147, 150-51 (3d Cir.1982), cert. denied, 459 U.S. 1211, 103 S.Ct. 1205, 75 L.Ed.2d 446 (1983), this court held that 18 U.S.C. Sec. 3731 does not authorize an appeal of a sentencing order.[7]
 
 
 39
 The government argues instead that 28 U.S.C. Sec. 1291 provides statutory authorization for the government's appeal in this case. The application of Sec. 1291 to criminal cases is discussed at length in Arizona v. Manypenny, 451 U.S. 232, 244-49, 101 S.Ct. 1657, 1665-68, 68 L.Ed.2d 58 (1981). In that case, a federal Border Patrol Agent was indicted for a state crime. Defendant removed the case to the federal district court, which concluded after the jury returned a guilty verdict that the defendant had a valid immunity defense. The State appealed, and after the Ninth Circuit found no jurisdiction, the Supreme Court held that Sec. 1291 provided jurisdiction to the federal courts of appeals if prosecutorial appeal was affirmatively sanctioned by the same sovereign that sponsored the prosecution. Thus, because Arizona law allowed appeal by the government, Sec. 1291 conferred jurisdiction on the courts of appeals to hear an appeal of the district court's acquittal in the removed case. In discussing the scope of Sec. 1291, the Court stated:
 
 
 40
 Under 28 U.S.C. Sec. 1291, any litigant armed with a final judgment from a lower federal court is entitled to take an appeal. By its terms, the statute addresses neither the identity of particular parties nor the nature of the prior legal proceedings. But while it is settled that a civil appeal, or an appeal by the defendant in a criminal case, may be taken from any final decision of a District Court, this Court has observed on prior occasions that, " 'in the federal jurisprudence, at least, appeals by the Government in criminal cases are something unusual, exceptional, not favored.' " Will v. United States, 389 U.S. 90, 96 [88 S.Ct. 269, 274, 19 L.Ed.2d 305] (1967), quoting from Carroll v. United States, 354 U.S. 394, 400 [77 S.CT. 1332, 1336, 1 L.Ed.2d 1442] (1957). This federal policy has deep roots in the common law, for it is generally understood, at least in this country, that the sovereign had no right to appeal an adverse criminal judgment unless expressly authorized by statute to do so.
 
 
 41
 451 U.S. at 244-45, 101 S.Ct. at 1666 (footnotes omitted). The Court further stated that "the Federal Government enjoys no inherent right to appeal a criminal judgment, and that the grant of general appellate jurisdiction, now contained in 28 U.S.C. Sec. 1291, does not authorize such a federal appeal." Id. at 246, 101 S.Ct. at 1667.
 
 
 42
 Although the Manypenny holding is not directly applicable in this case,[8] the Court's reasoning is certainly apposite. Moreover, this court specifically rejected the argument that Sec. 1291 enabled the government of the Virgin Islands to appeal adverse criminal judgments in Government of the Virgin Islands v. Hamilton, 475 F.2d 529 (3d Cir.1973). In that opinion, this court relied on DiBella v. United States, 369 U.S. 121, 130, 82 S.Ct. 654, 660, 7 L.Ed.2d 614 (1962), which recognized:
 
 
 43
 the historic policy, over and above the constitutional protection against double jeopardy, that denies the Government the right of appeal in criminal cases save as expressly authorized by statute.... No such expression appears in 28 U.S.C. Sec. 1291, and the Government's only right of appeal, given by the Criminal Appeals Act of 1907, ... now at 18 U.S.C. Sec. 3731, is confined to narrowly defined situations not relevant to our problem. Allowance of any further right must be sought from Congress and not this Court.
 
 
 44
 Thus, we hold that Sec. 1291 is not generally available as a source of appellate jurisdiction over prosecutorial appeals of final orders.
 
 
 45
 The government argues that sentencing orders are sufficiently independent of the merits of a criminal prosecution so as to be appealable under Carroll v. United States, 354 U.S. 394, 77 S.Ct. 1332, 1 L.Ed.2d 1442 (1957). Carroll stated that:
 
 
 46
 [C]ertain orders relating to a criminal case may be found to possess sufficient independence from the main course of the prosecution to warrant treatment as plenary orders, and thus be appealable on the authority of 28 U.S.C. Sec. 1291 without regard to the limitations of 18 U.S.C. Sec. 3731, just as in civil litigation orders of equivalent distinctiveness are appealable on the same authority without regard to the limitations of 28 U.S.C. Sec. 1292. The instances in criminal cases are very few.... In such cases, as appropriate, the Government as well as the moving person has been permitted to appeal from an adverse decision.
 
 
 47
 Id. at 403-04, 77 S.Ct. at 1338-39. This language suggests a criminal law analog to the civil law collateral order doctrine, allowing the government to appeal interlocutory orders which are independent of the merits of the case. The examples of such sufficiently independent interlocutory orders offered in Carroll were: 1) orders setting the amount of bail, and 2) orders suppressing or returning illegally seized evidence prior to indictment, after dismissal, or in a different district than the prosecution. 354 U.S. at 403-04, 77 S.Ct. at 1338-39.
 
 
 48
 Several circuits have held that Carroll's "sufficient independence" test allows government appeals of sentencing orders. E.g., United States v. Busic, 592 F.2d 13, 25-26 (2d Cir.1978) (order has "characteristics of independence and completeness" required by Carroll to grant government appeal under Sec. 1291 without regard to limitations of Sec. 3731); United States v. United States District Court, 601 F.2d 379 (9th Cir.1978). The Fifth Circuit has held that such orders are not appealable under Sec. 1291 because they lack the requisite independence. United States v. Denson, 588 F.2d 1112, 1126 (5th Cir.), vacated on other grounds, 603 F.2d 1143 (5th Cir.1979) (en banc) (sentencing order is "an integral aspect of a conviction" and does not possess "sufficient independence" from the criminal case to permit the government to appeal under Sec. 1291). Accord United States v. Lane, 284 F.2d 935 (9th Cir.1960) (found to have been overruled in United States v. Hetrick, 627 F.2d 1007, 1010 (9th Cir.1980)).
 
 
 49
 We reject the reasoning of the Busic line of cases. These cases take the "sufficient independence" test of Carroll out of context. The oft-quoted portion of Carroll dicta is most plausibly read to apply only to interlocutory collateral orders such as those specifically mentioned. The holding in Carroll was that there existed no jurisdiction to hear a government appeal of an interlocutory order suppressing evidence made while the indictment was pending in the same court. Nothing in that opinion suggests that sentencing orders "possess sufficient independence from the main course of the prosecution to warrant treatment as plenary orders, and thus [are] appealable on the authority of 28 U.S.C. Sec. 1291 without regard to the limitations of 18 U.S.C. Sec. 3731." 354 U.S. at 403, 77 S.Ct. at 1338. Moreover, Busic applies the "sufficiently independent" test without reference to the warnings in Carroll that "very few" orders are appealable under Sec. 1291 and the observation that "appeals by the Government in criminal cases are something unusual, exceptional, not favored." 354 U.S. at 403, 400, 77 S.Ct. at 1338, 1336. Finally, the assertion in Busic that sentencing orders are collateral to the merits of a criminal case is called into question by the observation that sentencing orders are themselves the final judgments in criminal cases. See Berman v. United States, 302 U.S. 211, 212, 58 S.Ct. 164, 165-66, 82 L.Ed. 204 (1937) ("Final judgment in a criminal case means sentence. The sentence is the judgment."); United States v. Denson, 588 F.2d at 1126 ("The sentencing process is the inevitable culmination of a successful prosecution; it is an integral aspect of a conviction."). This court, in United States v. Ferri, stated: "Given the Supreme Court's emphasis upon the rarity of orders falling within the Carroll doctrine and the strict requirement that such orders possess sufficient independence from the criminal case, it is indeed debatable whether the order [reducing sentence] challenged here can properly be classified as falling within the Carroll doctrine." 686 F.2d at 152. As presaged in Ferri, we hold that sentencing orders do not display the characteristics of independence required to render orders appealable under Sec. 1291 and Carroll.
 
 
 50
 The Ninth Circuit, in United States v. Hetrick, 627 F.2d 1007, 1009-10 (9th Cir.1980), used a different analysis in concluding that sentencing orders are appealable under Sec. 1291. Hetrick relied on the Supreme Court's decisions in United States v. Wilson, 420 U.S. 332, 337, 95 S.Ct. 1013, 1018-19, 43 L.Ed.2d 232 (1975) and United States v. Martin Linen Supply Co., 430 U.S. 564, 568, 97 S.Ct. 1349, 1352-53, 51 L.Ed.2d 642 (1977), which held that Congress intended Sec. 3731 to eliminate all barriers to government appeals in criminal cases except the constitutional barrier of the Double Jeopardy Clause.
 
 
 51
 Under Wilson and Martin Linen Supply, a government appeal is barred only if it implicates the concerns protected by the Double Jeopardy Clause of the Fifth Amendment. Because an appeal from an order modifying a sentence does not threaten to place the defendant twice in jeopardy, the government is not precluded from appealing a sentencing order. Insofar as our previous decisions suggest that government appeals are restricted to the specific categories listed in section 3731, those decisions have been superceded by Wilson and Martin Linen Supply. We hold, therefore, that the government may appeal, pursuant to section 1291, a district court's order reducing a sentence.
 
 
 52
 Hetrick, 627 F.2d at 1010 (footnote omitted). Several circuits have followed this course of reasoning. E.g., United States v. DeMier, 671 F.2d 1200, 1203-04 (8th Cir.1982); United States v. United States District Court, 645 F.2d 7 (6th Cir.1981).
 
 
 53
 We decline to follow Hetrick. While Wilson and Martin Linen Supply hold that Congress intended Sec. 3731 to extend jurisdiction over government appeals as far as the Constitution allows, they do not construe Sec. 1291. The government has made an express decision not to rely on Sec. 3731 in light of this court's conclusion in Ferri, 686 F.2d at 150-51, that Sec. 3731 does not allow prosecutorial appeal of sentencing orders.[9] We find that the Supreme Court's analysis of the Congressional intent expressed in Sec. 3731's legislative history is simply not pertinent to the issue of Sec. 1291 jurisdiction presented in this case.
 
 
 54
 Based on the ancient jurisprudential tradition requiring express statutory authorization of prosecutorial appeals, our conclusion that sentencing orders do not fall within the group of collateral orders appealable under Sec. 1291 as provided by Carroll, and our rejection of the analysis used in Hetrick to expand the reach of Sec. 1291 by reliance on the Congressional intent with respect to Sec. 3731, we find no support for the government's contention that Sec. 1291 provides appellate jurisdiction over prosecutorial appeals of sentencing orders. We therefore dismiss the government's appeal.
 
 IV.
 
 55
 The government petitions for a writ of mandamus requiring the district court judge to abide by the sentencing instructions contained in 14 V.I.C. Sec. 2251, which, the government argues, required the judge to impose the sentence for Count II consecutively with the sentence for Count I. This court is authorized to issue writs of mandamus under the All Writs Act, 28 U.S.C. Sec. 1651, and Fed.R.App.P. 21. Challenges of a district court judge's power to impose a particular sentence fall within the narrow range of cases in which mandamus may be appropriate. United States v. Busic, 592 F.2d 13, 26 n. 11 (2d Cir.1978).
 
 
 56
 In order to secure a writ of mandamus, petitioner must establish that the government officer in question has a non-discretionary duty to perform the specified action. The legal duty must be "clear and indisputable." Kerr v. United States District Court, 426 U.S. 394, 403, 96 S.Ct. 2119, 2124, 48 L.Ed.2d 725 (1976).[10] In this case, the government asserts that the district court judge had a duty under law to impose the sentence for Count II consecutively with the sentence for Count I. We must construe the language of 14 V.I.C. Sec. 2251(a)(2)(B), which states that the penalty for conviction thereunder "shall be imposed in addition to the penalty provided for the commission of, or attempt to commit, the crime of violence." 14 V.I.C. Sec. 2251(a)(2)(B) (Supp.1985) (emphasis added). Our review of this statutory construction issue is plenary.
 
 
 57
 The government argues that the language itself is unambiguous and requires imposition of consecutive sentences. We disagree. While the government's construction is plausible, the phrase "in addition to" can also be construed to mean, "not in lieu of" thereby requiring imposition of two sentences without regard to whether they are to run consecutively or concurrently.[11]
 
 
 58
 The government analogizes to a similar federal statute which states:
 
 
 59
 Whoever, during and in relation to any crime of violence, including a crime of violence which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device, for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence, be sentenced to imprisonment for five years.... Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person convicted of a violation of this subsection, nor shall the term of imprisonment imposed under this subsection run concurrently with any other term of imprisonment including that imposed for the crime of violence in which the firearm was used or carried.
 
 
 60
 18 U.S.C. Sec. 924(c) (Supp. II 1984) (emphasis added). While we agree with the government that Sec. 924(c) mandates consecutive sentences, it is the explicit prohibition of concurrent sentences and not the use of "in addition to" which conveys that mandate. At most, this provision demonstrates that the use of "in addition to" is consistent with mandatory consecutive sentences. It fails to demonstrate that "in addition to" is inconsistent with the "not in lieu of" interpretation posited above.[12]
 
 
 61
 Douglas relies on a Missouri Supreme Court opinion in which the Court construed an analogous statute to allow concurrent sentences. State v. Treadway, 558 S.W.2d 646 (Mo.1977), cert. denied, 439 U.S. 838, 99 S.Ct. 124, 58 L.Ed.2d 135 (1978). The state law provision stated: "The punishment imposed pursuant to this subsection shall be in addition to any punishment provided by law for the crime committed by, with, or through the use, assistance, or aid of a dangerous or deadly weapon." Mo.Rev.Stat. Sec. 559.225 (Supp.1976). The court found that the statute itself did not offer any indication about whether the use of the phrase "in addition to" mandated consecutive sentences. Thus the Court relied on the general rule of statutory construction refered to as the "rule of lenity," and the corollory of that rule: " 'in case of doubt concerning the severity of the penalty prescribed by a statute construction will favor a milder penalty over a harsher one.' 3 Sutherland, Statutory Construction Sec. 59.03 (4th ed. 1974)." Treadway, 558 S.W.2d at 653.
 
 
 62
 The words "in addition to", standing alone, do not clearly mandate that a sentence under the armed criminal action statute be imposed consecutive to a sentence for the felony conviction upon which the armed criminal action charge is based. The phrase is defined in Webster's Third New International Dictionary 24 (3rd ed. 1966) as meaning "over and above". Whether the sentence under Sec. 559.225 is imposed consecutively or concurrently, it is clearly "over and above" that imposed for the basic felony. In the absence of express language by the legislature mandating that sentences under Sec. 559.225 be consecutive, it appears that the trial court should be able to sentence a defendant consecutively or concurrently as it sees fit.
 
 
 63
 Treadway, 558 S.W.2d at 653.
 
 
 64
 We find the analysis in Treadway instructive. The intent of the legislature is unclear from the statutory language because that language is consistent with both an intent to mandate consecutive sentences and an intent to allow the sentencing judge to exercise his or her discretion in selecting between consecutive and concurrent sentences. The government points to no legislative history evincing an intent to mandate consecutive sentences. In light of the "rule of lenity," we are obliged to construe ambiguities in criminal statutes in favor of the accused. United States v. Capano, 786 F.2d 122, 128 (3d Cir.1986). On this basis, we conclude that Sec. 2251(a)(2)(B) does not impose a mandatory duty on the district court judge to impose consecutive sentences and we deny the government's petition for a writ of mandamus.
 
 V.
 
 65
 We will affirm Douglas' conviction on Counts I and II, but will vacate the sentence with respect to Count I and will remand for resentencing in light of our holding that 14 V.I.C. Sec. 331 does not impose any mandatory minimum sentence for attempting to commit a criminal offense. We find that we have no jurisdiction to entertain the government's appeal of the sentencing order, and therefore we will dismiss the government's appeal in No. 85-3732. We construe 14 V.I.C. Sec. 2251 to vest in the trial court the discretion to impose the sentence for the weapons violation either consecutively or concurrently with the sentence for the underlying crime of violence, and thus we will deny the government's petition for a writ of mandamus.
 
 
 
 [1]
 In response to Douglas' legal argument, the government asserts that the determination of which crimes are lesser included offenses of the crime charged is based solely on a conceptual comparison of the elements of each crime, independent of the facts of the case. While we do not decide the issue, we suggest that the government's reasoning is flawed. The government is correct in asserting that an abstract comparison of the elements is necessary. Government of the Virgin Islands v. Bedford, 671 F.2d 758, 765 (3d Cir.1982) (it was improper to amend a charge of assault with intent to commit robbery to assault with a deadly weapon because, although the information alleged that the assault was conducted with a handgun, in the abstract assault with intent to rob does not require proof of the use of a deadly weapon); Government of the Virgin Islands v. Smith, 558 F.2d 691, 695-96 (3d Cir.), cert. denied, 434 U.S. 957, 98 S.Ct. 486, 54 L.Ed.2d 316 (1977) (possession of a dangerous weapon was not a lesser included offense of murder despite the fact that the evidence adduced in the murder trial established all of the elements of the weapons charge, because the elements of murder do not in the abstract necessarily include possession or use of a dangerous weapon). The government errs, however, in concluding that such abstract correspondence is sufficient
 A crime and a lesser included offense are comprised of common factual elements and are distinguished only by disputed factual elements to be considered by the jury. See Sansone v. United States, 380 U.S. 343, 349-50, 85 S.Ct. 1004, 1009-10, 13 L.Ed.2d 882 (1965); Government of the Virgin Islands v. Greenridge, 600 F.2d 437, 440 (3d Cir.1979). Thus, in a typical example, attempted rape of A is a lesser included offense of the crime of rape of A because the crimes are composed of common factual elements except for the disputed fact of penetration. It is beyond question, however, that attempted rape of B is not a lesser included offense of the charge of rape of A. Thus, both factually and theoretically, every element of the lesser included offense must correspond to an element in the original charge.
 
 
 [2]
 Douglas argues that the government prosecuted him on the legally erroneous belief that sodomy included forcing a victim to penetrate the accused. While elements of the government's trial strategy support the conclusion that the government held this belief, neither the information nor the presentation of the government's case limited the prosecution to that theory. The government's opening statement referred to both Douglas' attempt at penetrating the victim and the penetration of Douglas by the victim and on direct examination the victim testified that Douglas attempted to penetrate him
 
 
 [3]
 " 'Crime of violence' means any of the following crimes, or an attempt to commit any of the same, namely: Murder in any degree, voluntary manslaughter, rape, arson, mayhem, kidnapping, assault in the first degree, assault with or by means of a deadly or dangerous weapon, assault to do great bodily harm, robbery, burglary, housebreaking, breaking and entering and larceny." 23 V.I.C. Sec. 451(e) (1970)
 
 
 [4]
 Douglas made several other claims of error: (1) the evidence of the attempt was insufficient; (2) the evidence that the knife used was "dangerous" and "deadly" was insufficient; (3) the failure to instruct the jury on charges of attempted rape and unlawful sexual contact was plain error; and (4) the limitation of cross-examination of the victim was an abuse of discretion. We have considered each of these claims and find them to be without merit
 
 
 [5]
 The government's reliance on United States v. Falu, 776 F.2d 46, 49 (2d Cir.1985), is misplaced. In Falu, the court held that an enhanced punishment provision applicable to principals was also applicable to aiders and abetters on the basis of a statutory provision stating that aiders and abetters are to be treated as principals. There is no comparable law in this case stating that those convicted of attempt should be treated as those convicted of a completed offense
 
 
 [6]
 There is statutory authority, modeled after Sec. 3731, for criminal appeals by territorial governments. 48 U.S.C. Sec. 1493 (Supp. II 1984)
 
 
 [7]
 Other circuits have concluded that sentencing orders are appealable by the government pursuant to Sec. 3731. See, e.g., United States v. Prescon Corp., 695 F.2d 1236, 1240-41 (10th Cir.1982); United States v. Godoy, 678 F.2d 84, 87 (9th Cir.1982), cert. denied, 464 U.S. 959, 104 S.Ct. 390, 78 L.Ed.2d 334 (1983)
 
 
 [8]
 Government of the Virgin Islands v. Christensen, 673 F.2d 713, 716-17 (3d Cir.1982) (prosecutions by the territory of the Virgin Islands are actions derived from the federal sovereign and are thus appealable as allowed by Sec. 3731 without special authorization in Virgin Islands law)
 
 
 [9]
 The conclusion in Ferri that Sec. 3731 did not include sentencing orders has been confirmed by the statutory history. Chapter 235 of Title 18 was amended in 1984 to allow the government to appeal sentences "imposed in violation of law." Pub.L. No. 98-473, Sec. 213(a), 98 Stat. 1837, 2011 (1984) (to be codified at 18 U.S.C. Sec. 3742). That amendment will take effect on November 1, 1987. Pub.L. No. 98-473, Sec. 235(a)(1), 98 Stat. 1837, 2031 (1984), as amended by Pub.L. No. 99-217, Sec. 4, 99 Stat. 1728 (1985). The inclusion of that language suggests that Congress understood the preexisting law to provide that such orders were not appealable. Nothing in the legislative history conflicts with this interpretation
 
 
 [10]
 The "clear and indisputable" test is applied after the statute has been construed by the court entertaining the petition. "The requirement that a duty be 'clearly defined' to warrant issuance of a writ does not rule out mandamus actions in situations where the interpretation of the controlling statute is in doubt.... As long as the statute, once interpreted, creates a peremptory obligation for the officer to act, a mandamus action will lie." 13th Regional Corp. v. U.S. Department of Interior, 654 F.2d 758, 760 (D.C.Cir.1980)
 
 
 [11]
 The government stresses that the use of the word "shall" indicates that the judge does not have discretion. There is no question that the law requires the imposition of an additional sentence, and that a writ of mandamus would be available if the judge had failed to impose a sentence altogether. However, this does not inform our analysis of the meaning of the phrase "in addition to."
 
 
 [12]
 The "in addition to" phrase would also have been appropriate if the final clause of Sec. 924(c) specified that sentences under both Sec. 924(c) and the predicate crime must be imposed, but that they could be run either concurrently or consecutively